## BLOT *vs.* BOICEAU and RUSCH,

Where goods are consigned to a factor for sale with specific instructions as to the price, he has no right to sell below the price named to cover his advances without calling on his principal for repayment.

But where the factor sells below the price named in the instructions, the measure of damages in an action brought by the principal on account of the wrongful sale, is only the amount of injury actually sustained.

It is therefore competent for the factor in such a case to show, in reduction of the damages, that the goods, at the time of the sale, and down to the time of trial, were worth no more than the price at which they were sold.

If the factor sells below his instructions, although at the then market value, he takes the peril of a rise in the value of the goods at any time before the action is brought, and perhaps down to the time of trial. *Per* BRONSON, J.

Where the consignment is of articles which have no market value, such as antique paintings, statues, or vases, it seems the principal may insist upon the prices named in the instructions, without regard to the market.

APPEAL from the superior court of the city of New-York, where the action was assumpsit, brought by Blot against Boiceau and Rusch, tried before OAKLEY, Ch. J. of that court, in October, 1847.

The plaintiff, a manufacturer at Amiens in France, in June and July, 1844, consigned to the defendants, who were commission merchants in New-York, goods for sale, invoiced, in the aggregate, at 10,908,82 francs. The consignments were accompanied with instructions not to sell at less than the invoice prices, adding thereto freight, commissions, and other expenses. In August and September, after receiving the goods, but before any

sale, the defendants remitted to the plaintiff, as an advance on the goods, the sum of 4900 francs. In September and October, 1844, the defendants sold the goods for considerable less than the invoices, and the sales were made without calling upon the plaintiff to repay the advances. On proving these facts the plaintiff rested, claiming to recover the difference between the prices named in the instructions and the actual sales.

(The defendants then proved that the season for selling goods of the kind in question closed in October; that the goods were fairly and publicly sold at auction after due advertisement, and brought the full auction prices. )(They also offered to prove that, upon the receipt of the goods, and until they were sold, the defendants made diligent effort to sell them at private sale for the prices specified in the invoices, but could not dispose of them in that way; also that the goods were of inferior quality, and not worth in the season of 1844, or afterwards, any more than the prices actually obtained; also that goods of that description were calculated to become unfashionable and unsaleable if kept over to another season; also that they were sold in parcels at different places, wherever it appeared they would produce the best prices. The evidence so offered was excluded, and the defendants excepted.

The jury, under the direction of the court, found a verdict for $1200, subject to the opinion of the court on a case to be made, and subject to adjustment as to the amount of damages. The superior court, on argument of the case, directed judgment in the plaintiff's favor for the invoice price of the goods, adding freight, duties, charges and commissions, deducting the amount advanced by the defendants. (*See* 1 *Sandf. Superior Court Rep.* 111, *where the case is stated with fuller details.*) The defendants appealed to this court.

*J. W. Gerard,* for the appellants. I. The court erred in excluding the testimony offered on the part of the defendants. It was competent for the defendants to prove, either in bar of the action or in mitigation of damages, (1.) The efforts made by them to comply with the wishes of the consignor, and that it

was impossible to do so. (2.) That the goods were never worth more than they actually sold for. The offer was broad enough to embrace their value, either in this country or in France, or in any part of the world. (3.) That they were goods which would become unfashionable and unsaleable, if kept over to a subsequent season. This would have had a material bearing in enabling the jury to determine the relative importance to be attached to the two conflicting heads of instructions, namely: as to prices and time of sale. It would also have excused the defendants from writing to demand payment of their advances before selling, as the value of the goods would have been lost by the delay of doing so. (4.) That the goods were fairly sold, and to thebest advantage.

II. If the plaintiff was entitled to recover at all, he could only recover the actual damages sustained by the alledged breach of his instructions; and if the goods in question were never, after the defendants received them, worth more than the prices obtained for them, he could recover nominal damages only. If the plaintiff can repudiate the sale as having been made for his account, the defendants are liable as for a conversion of the goods, and perhaps for their highest value from the time of sale to that of trial, but for nothing more. (*Shannon* v. *Comstock*, 21 *Wend.* 457; *Kennedy* v. *Shang*, 14 *John.* 128; *Crellebank* v. *Jerome*, 7 *Cowen*, 294.)

III. A consignee who has made advances on the goods consigned, is authorized to sell the goods in the ordinary course of business to reimburse his advances, even contrary to the orders of the consignor, unless he had expressly agreed not to do so. And it appearing on the face of the correspondence put in evidence by the plaintiff himself, that the defendants in this case had made large advances on the goods, relying on the plaintiff's statements of their description, quality and value, before seeing them; and that the event proved the plaintiff's statements to be false and exaggerated, there is no such express or implied agreement in this case, and the rule does not apply. (*Brown* v. *McGran*, 14 *Peters' Rep.* 479.)

·*H. Nicoll*, for respondent. I. The delivery to the defendants of the merchandise consigned to them by the plaintiff, was accompanied with specific instructions, as to the sale of the same, which were imperative upon the defendants. Nor did the subsequent advances made by them upon said merchandise give them, until demand made for the reimbursement of such advances, any right whatever to sell said merchandise, for prices less than those limited in the instructions. (*Bell* v. *Palmer*, 6 *Cowen*, 128; *La Farge* v. *Kneeland*, 7 *id.* 456; *Pothonier* v. *Dawson, Holt's N. P. R.* 383; *Parker* v. *Brancher*, 22 *Pick.* 40; *Brown* v. *McGran*, 14 *Peters*, 578; *Paley on Agency, by Dunlap, p.* 31, *notes and cases cited.*)

II. In construing said instructions, and in ascertaining how they were understood by the respective parties, recourse must be had to the entire correspondence between them, as set out in the bill of exceptions. (*Ely* v. *Adams*, 19 *John.* 313; *Murray* v. *Bethune*, 1 *Wend.* 191; *Choate* v. *Burnham*, 7 *Pick.* 274; *New Eng. Ins. Co.* v. *De Wolf*, 8 *id.* 56; *Cambridge* v. *Lexington*, 17 *id.* 22; *Clarke* v. *Munger*, 22 *id.* 410; *Stone* v. *Clarke*, 1 *Metcalf*, 378.) From such correspondence the following deductions are palpably to be drawn. (1.) That the defendants were not authorized, by the said instructions, to sell the said merchandise under the invoice price, adding duties, commissions and charges, and that they themselves understood such to be the import of said instructions. (2.) That the defendants never pretended that the instructions were ambiguous or uncertain, or that they were misled by them. (3.) In answer to the defendant's remonstrances for selling the goods at so ruinous a sacrifice, they justify their acts on a ground entirely untenable, to wit, their right to reimburse themselves for their advances, without a previous demand therefor. (4.) That the defendants never made any demand for a reimbursement of their advances, and that the defendant, had such demand been made, stood ready to comply with it at once.

III. The rule of damages, in this case, must be the difference between the invoice prices and charges, and the net proceeds of sale as rendered by defendants, deducting one-half com-

missions, and freight back to France, with commission on draw-back; and on this principle the damages were assessed by the jury in the court below. (*Allen* v. *Suydam,* 20 *Wend.* 321; *Guy* v. *Oakley,* 13 *John.* 333; *Stevens* v. *Low,* 2 *Hill,* 132.) The value of the merchandise in the New-York market at the time, could not be the rule of damages. The necessary effect of such a rule, would be to render it useless in any case to limit a factor in the sale of merchandise consigned to him.

RUGGLES, J.   The letters from the plaintiff to the defendants, containing invoices of the goods in controversy and instructions in relation to their sale, were received before the defendants made any advances of money on the goods. The goods must therefore be considered as received and held by the consignees subject to such instructions. (*Brown* v. *McGran,* 14 *Wheat.* 495.) The goods had not then arrived, and the advances were made upon the invoice prices, before the quality and value of the goods had been ascertained by the consignees; and it turned out that the sums advanced were greater than the actual value of the goods in the New-York market, but there is no ground for supposing that the goods were fraudulently over-valued for the purpose of procuring the advance. The advance, although it may have been expected, was not demanded by the consignor, nor its amount suggested. The consignor was probably mistaken with respect to the value of the goods in this country. The consignees being therefore bound by the instructions, it becomes necessary to ascertain what they were.

In the letter containing the first invoice of three cases of goods, the plaintiff Blot wrote to the defendants, "we mean to get back at least the principal sum. If you can obtain a profit on these prices it will give me much pleasure. Be careful to make the merchandize bear all the expenses incurred by them, as well for freight as for duties. I desire that all I send you should be sold this season." This letter was received on the 18th of July, 1844. The goods, which came by the ship St. Nicholas, had not yet arrived.

On the 2d of August, and before the arrival of that ship, the

defendants received a second letter containing an invoice of three additional cases of goods amounting to 5491,42 francs. In that letter the plaintiff says, " you will please credit me with that amount in account, and sell at least at the prices invoiced, adding thereto the expenses, duties and commissions. For greater clearness, I mean to get back on this account the same as in the value of my first consignment, which I now confirm. It is also my wish that you should dispose of all these goods this season. I do not like to have goods lying over from one season to another."

The first letter does not contain an explicit order not to sell the goods for less than the invoice prices and expenses. The plaintiff says only, " we mean to get back at least the principal sum," desiring in the same letter that the goods should be sold that season. From this letter the consignee might well have supposed the plaintiff's intention was to have the goods sold for the specified price, if they could be sold at that price during the season, and if not, that they should be sold at all events. But the second letter contains a positive direction to sell at least for the specified prices; and although in the same letter the consignor says, " it is his wish" that the goods should be sold that season, he gives no positive order to that effect. The defendants could not have failed to understand that the instructions contained in the last letter would have protected them in keeping the goods on hand, if they could not be sold at the invoice prices with the expenses added. They appear to have so understood the directions; for in their letter to the plaintiff, dated 30th of August, 1845, they do not complain of any obscurity in their instructions, nor do they pretend that they were authorized by their tenor, to sell for the prices actually obtained; but they undertake to justify the sales on the ground that having made advances on the consignments, they were authorized to sell for their own reimbursement, although at less than the specified prices. In this they were mistaken. Having received the invoices and instructions before they made the advances, they must be deemed to have assented to the instructions; and were bound by them until after having found that the goods could

not be sold at the limited prices, and after due notice and request, the consignor had refused or neglected to repay the advances. The defendants were therefore liable to the plaintiff for the damages consequent upon the sale without authority.

The question then arises, by what rule are the damages to be estimated? The plaintiff claimed to recover the difference between the amount of the invoices with charges and interest, and the net proceeds of the goods.

The defendants insist that the plaintiff is entitled to recover, if at all, only according to the actual value of the goods after deducting the proceeds and charges.

*Prima facia* the invoice prices with the charges and interest ought to be regarded as the actual value, and if no other evidence of value had been given or offered, the plaintiff should have recovered, according to his claim. (*Stevens* v. *Low*, 2 *Hill*, 132.)

But the defendants proved that the goods were fairly sold at auction, on due notice with the usual publicity, and that they produced full auction prices. They offered to prove that the goods could not be sold at private sale at the invoice prices after diligent efforts for that purpose ; that the goods were of inferior quality, not worth during the season more than they actually sold for at auction ; and that they were likely to become unfashionable and unsaleable if kept over to another season. This evidence was excluded by the court ; and the judge charged the jury that the plaintiff was entitled to recover the difference between the invoice prices with charges and interest and the net proceeds. Exceptions were taken to these decisions.

We are of opinion that the court erred in excluding the evidence of actual value offered by the defendants, and in the rule of damages stated to the jury. In all cases, excepting those of wilful or malicious wrong, the recovery should be such as to give the plaintiff a just compensation for the wrong done or the right withheld, and nothing more. This rule applies as well to actions brought by a principal against his agent as to other cases. Where, in the action against the agent, the breach of duty is clear, it will, in the

absence of all evidence of other damage, be presumed that the party has sustained a nominal damage. But to recover more, there must be proof of real loss, or actual damage. (*Story on Agency,* § 217, *c.*) It is a good defence that the misconduct of the agent has been followed by no loss or damage to the principal, for then the rule applies that, although it is a wrong, yet it is without any damage, and to maintain an action both must concur, for *damnum absque injuria,* and *injuria absque damno,* are in general equally objections to any recovery. (*Id.* § 236.) Assuming as true, what the defendants offered to prove, that the goods in question sold for their full value, the plaintiff has sustained no loss, and should have recovered nominal damages only. If this verdict should be upheld, he will recover damages without having sustained injury, and be placed in better condition than if his instructions had been obeyed.

I am not aware that any considerations of public policy require the application to the present case, of a rule which produces such a result. It seems to have been thought in the court below, that if the consignor were not allowed to recover according to this rule, it would render his instructions nugatory, and practically annul the power of the owner of property to fix a price below which it should not be sold. But if the proof offered by the defendants had been admitted, the plaintiff would have been allowed to show that he could have sold the goods to better advantage by reshipping them to France or elsewhere, and in that case would have been entitled to recover accordingly. Or if the market price of such goods had risen after the sale made by the defendants, they would have been liable to pay according to such increased value. A factor thus selling goods in violation of his instructions takes upon himself the hazard of loss from the fluctuations in the market without the possibility of gain; and this is practically a sufficient security against the disobedience of his principal's order. There is no need of subjecting him to a higher penalty.

There is a direct adjudication on this point in 12 *New Hamp. Rep.* 239, 242, in the case of *Frothingham* v. *Evertson.* Evertson delivered a quantity of wool in the month of March, to be

sold at not less than 24 cents the pound. Frothingham made advances. The price of wool fell soon after the consignment, and continued to fall until October, when Frothingham, without calling on his principal to refund the advances, and without notice to him, sold the wool at 14 cents the pound, which was all it was then or afterwards worth. It was held, in an able opinion delivered by Chief Justice Parker, that the measure of damages was the amount of injury sustained by the sale contrary to the orders of the principal, and that no actual loss appearing to have been sustained by the wrongful act of the factor, the principal was entitled only to nominal damages. The present case should be governed by the same principle.

The judgment of the superior court should therefore be reversed, and a new trial awarded.

BRONSON, J. The consignees had no right to sell the goods below the price mentioned in their instructions from the consignor, without first calling on him for the reimbursement of their advances. As no such demand was made, the defendants are liable to an action, and must pay nominal damages, at the least. In settling the amount of damages in such cases, if there is no proof to the contrary, the price mentioned in the instructions should, I think, be deemed the true value of the goods. But the consignor would be at liberty to enhance the damages, by proving that the goods were worth more than the minimum price which he had put upon them; and I see no reason why the consignee should not be allowed to reduce the damages, by showing that the goods were of less value than the price mentioned in the instructions. If the goods were sold at their full value, the consignor has sustained no damage, and should recover only a nominal sum. The factor should be required to give strong proof for the purpose of showing the market value to be less than the instruction price; but he may, I think, give the proof, if he can. Clearly the consignor has sustained no damage beyond the difference between the actual value, and the price obtained on the sale; and I see no ground for making this case an exception to the general rule, which gives the in-

Blot *v.* Boiceau.

jured party compensation for the pecuniary loss which he has sustained, and nothing more. In *Frothingham* v. *Evertson,* (12 *N. Hamp.* 239,) the court held, that the measure of damages in cases of this kind is, the amount of injury which the consignor has sustained by selling contrary to orders; and if there has been no actual loss, he will only be entitled to nominal damages. I think this a sound rule; and am not aware of any case which holds a different doctrine.

It is said, that this rule of damages will enable factors to violate the instructions of their principals with impunity. But that is a mistake. If they sell below the instruction price, though at the then market value, they will take the peril of a rise in the value of the goods at any time before an action is brought for the wrong; and, perhaps, down to the trial. The owner has a right to keep his goods for a better price; and if the market value advances after the wrongful sale, the increased price will form the standard for ascertaining his loss, which the factor, who has departed from instructions, must make good.

If it be a matter of any moment in this action, there is no room for doubt that the defendants, though they mistook the law, intended to act in entire good faith towards their principals. And if the evidence which they offered had been received, it would have appeared, that the plaintiff, instead of suffering loss, was benefited by the sale.

When the consignment is of articles which have no market value, such, for example, as antique paintings, statues or vases, the rule which has been mentioned will not apply. In this case, the goods had a market value, which could easily be ascertained.

I am of opinion that the court erred in rejecting evidence, and in the rule which it gave concerning the measure of damages.

Judgment reversed.