## CHARLES A. WEED *vs.* NATHANIEL E. ADAMS.

A factor, who has made no advances, and incurred no liability on account of goods consigned, is bound to obey the orders of his principal in respect to the time and mode of selling. But if he has made advances or incurred liabilities on the credit of the goods, he has a right to sell enough to reimburse his advances or meet his liabilities, unless restrained by some agreement with the consignor.

This right however is limited to the protection of his own interest in the property, and if he sells more than is necessary for that purpose, contrary to the orders of his principal, he is liable for the loss incurred.

A factor may lawfully disregard the instructions of his principal to sell immediately, if it is manifest that his security will be thereby impaired, or if, in the exercise of a sound discretion, he believes that full indemnity for advances made or liabilities incurred will depend upon withholding the goods from market.

A, the lessee of a cotton plantation, contracted with W, a commission merchant, for advances, and agreed to give W a special lien on all the crops of the plantation, and to consign them as fast as prepared for market to him for sale; the proceeds to be applied in payment of the advances, expenses and commissions, and the balance to be paid to A. Advances were made to A and the goods consigned to W pursuant to the contract. A instructed W to sell the cotton as fast as received, but the order was not obeyed. At the time of the first shipment cotton was $1.85 per pound. Soon after the last shipment it was $1.15 per pound, at which price the whole was sold. The avails were insufficient to pay the advances. If the order had been obeyed there would have been sufficient to pay the advances, commissions, and all expenses, and leave a considerable balance for A. It did not appear that the order, if complied with, would have impaired W's security, nor that he had any fears that such would be the result; but he held the cotton in good faith, with the expectation of obtaining higher prices for the benefit of all concerned. Held—1. That W was not justified in disobeying the orders of A. 2. That W had no right under the contract to retain the cotton till all was shipped, for the purpose of preserving his lien on the accumulated shipments. 3. That the special lien by contract conferred upon W no additional rights and powers, after the property came into his possession by consignment.

PETITION for a foreclosure, brought to the Superior Court in Fairfield county, and reserved, upon facts found by a committee, for the advice of this court. The case is sufficiently stated in the opinion.

*Child*, for the petitioner, cited Story on Agency, § 372; Dunlap's Paley's Agency, 128, 185, note *d*, 364 ; 2 Kent Com.,

639, 640; *Stevens* v. *Robins,* 12 Mass., 180; *Baker* v. *Fuller,* 21 Pick., 321; *Vail* v. *Durant,* 7 Allen, 408; *Brooks* v. *Bryce,* 21 Wend., 14; *Bryce* v. *Brooks,* 26 id., 367; *Drinkwater* v. *Goodwin,* Cowp., 251; *Booth* v. *Barnum,* 9 Conn., 286; *Brown* v. *McGran,* 14 Peters, 479; *Pothonier* v. *Dawson,* 1 F. L. Holt, 385; *Lickbarrow* v. *Mason,* 6 East, 22, note; *Parker* v. *Brancker,* 22 Pick., 40; *Marfield* v. *Douglass,* 1 Sandf. S. C., 360; *Knapp* v. *Alvord,* 10 Paige, 205.

*Curtis* and *Olmstead,* for the respondent, cited *Brown* v. *McGran,* 14 Peters, 480; Dunlap's Paley's Agency, 3, and note; *Leverick* v. *Meigs,* 1 Cowen, 668; *Peters* v. *Ballistier,* 3 Pick., 501; *Gray* v. *Murray,* 3 Johns. Ch., 167; *Banorgee* v. *Hovey,* 5 Mass., 36; *Courcier* v. *Ritter,* 4 Wash. C. C., 551; *Kingston* v. *Kincaid,* 1 id., 448; *Evans* v. *Root,* 3 Seld., 186; *Parker* v. *Brancker,* 22 Pick., 40; Story on Agency, §§ 372, 377.

CARPENTER, J.   The respondent was the lessee of a cotton plantation in the state of Louisiana in the year 1864.   The petitioner was the principal member of the firm of Weed, Witters & Co., commission merchants and grocers, of New Orleans.   Weed, Witters & Co. and the respondent entered into a written agreement, in which it was stipulated that Weed, Witters & Co. should make advances of cash and supplies, for the purpose of carrying on the plantation, and that the respondent should ship and consign the crops made thereon, when ready for market, to Weed, Witters & Co., to be by them sold in the usual and best manner of commission merchants, the proceeds to be applied in payment of the advances and supplies, and the balance, after deducting certain commissions &c., to be paid over to the respondent.

It was further stipulated that Weed, Witters & Co. should have a special lien and privilege on the crops of the plantation, to secure them in the amount of their advances, and the performance by Adams of all the conditions and agreements on his part in the contract.   There were other agreements in the contract, but they do not affect the questions involved in this case.

Pursuant to the contract advances were made to a large amount, and the crops of the plantation were duly consigned to Weed, Witters & Co. for the purpose specified. There was no special agreement as to the time of selling the cotton; but the respondent gave explicit directions that the same should be sold as fast as received. .These instructions were not obeyed. If they had been the avails would have been sufficient to pay all advances, commissions and expenses, and leave to the respondent a considerable balance.

Weed, Witters & Co., supposing that cotton would command a higher price, held the same for the benefit of all concerned. But soon after the first shipment arrived the price of cotton began to fall, and during the time of shipment declined from $1.85 per pound to $1.15 per pound, at which last named price it was finally sold. The result was a balance of over two thousand dollars against the petitioner, for which the note in suit was given—the parties agreeing that the defence now made should be open to the respondent. This note was assigned to the petitioner, who received it with full knowledge of all the circumstances. The question is, had the firm a right to hold the cotton in the manner above stated?

A factor, who has made no advances, and incurred no liability on account of goods consigned, is bound to obey the orders of his principal in respect to the time and manner of selling. This is familiar and conceded law. But if he has made advances, or otherwise incurred a liability upon the credit of the goods, whereby he has acquired a special property therein, he has a right to sell enough to re-imburse his advances, or meet his liabilities, unless restrained by some agreement with the consignor. *Brown* v. *McGran*, 14 Peters, 479; *Marfield* v. *Douglass*, 1 Sandf. Sup. Ct. R., 360. In the latter case it was held that a factor, having sold the goods of his principal to an amount in excess of the amount required to indemnify himself, was liable to the principal for the damage sustained in consequence of the sale of such excess. In these cases the factors violated instructions prohibiting the sale. Most of the cases that have arisen on this subject have been cases of this character, which differ mate-

Weed v. Adams.

rially from the case at bar, in which the instructions were to sell immediately and apply the proceeds in payment of the advances.

It appears from the cases cited, as well as from other authorities, that the rule authorizing a factor to disregard the instructions of his principal is limited to the protection of his own interest in the goods consigned. Hence, after he has re-imbursed himself, in respect to the remaining goods he is bound to obey orders not to sell. Upon the same principle, if the consignor pays the advances or otherwise provides for the liabilities incurred on account of the goods, he may sume his right to direct as to the time and manner of sale.

We see no reason why directions to sell immediately shou not be governed by the same principle. If obedience to such instructions will manifestly impair the factor's security he is not bound to obey. For instance, if the goods at present prices are insufficient to pay the advances, and the goods are on a rising market, he may hold them, and thus take the benefit of the rise, notwithstanding the instructions of the principal to the contrary. If the advances are large, and it is uncertain whether present prices will fully indemnify the factor, he may, if in the exercise of a sound discretion he deems it for his interest to do so, hold the goods contrary to orders, although the result may be doubtful. This question has recently been under consideration in the Supreme Court of the United States. *Field* v. *Farrington*, 10 Wallace, 141. In that case Mr. Justice Strong, in giving the opinion of the court, lays down the rule as follows: " Now though it is true that factors are generally bound to obey all orders of their principals respecting the time and mode of sale, yet when they have made large advances, or incurred expenses on account of the consignment, the principal cannot by any subsequent orders control this right to sell at such a time as, in the exercise of a sound discretion, and in accordance with the usage of trade, they may deem best to secure indemnity to themselves and to promote the interests of the consignor. Of course they must act in good faith and with reasonable skill."

In this class of cases also the consignor may, by remittances in cash, or by a further consignment of goods, strengthen the security and entitle himself to the right to control the sale. We are thus brought to consider the question whether, in the present case, the interest of the consignees, Weed, Witters & Co., required them to disregard the instructions of the respondent to sell without delay.

It does not appear from the report of the case that they at the time placed their refusal to sell on any such ground. The only reason why the instructions were not obeyed was, an expectation on the part of the consignees that there would be ___ in the market; but there was no pretence that such ___ was needed for their security. Their only motive seems ___ have been to obtain larger profits in the increased commissions. It is to be observed that in the argument of the case the learned counsel for the petitioner does not intimate that there was any ground to apprehend that the sufficiency of the consignees' security depended at all upon their obtaining higher prices; but the case is put upon the broad ground that as consignees, having made large advances, they had an unqualified right to sell or not to sell at their discretion.

In point of fact the security would have been ample if the instructions had been followed. As it was it proved quite insufficient; thus demonstrating that the security did not depend upon disobeying orders, but quite the reverse.

It would seem now in looking back upon the transaction that all the probabilities pointed to that result. At the time the first order to sell was given, (for it was twice repeated subsequently,) cotton was unusually high; but it soon commenced falling, and fell rapidly—declining seventy cents per pound in the space of a few weeks. Some of it might have been sold for the highest price, while nearly all of it could have been sold for more than was actually realized.

The order to sell therefore, neither in fact, nor apparently, infringed upon the rights of the consignees and should have been obeyed. A failure to obey it having resulted in an injury to the respondent exceeding the amount of the note in suit, we think he has a good defense.

The petitioner's counsel claimed that the firm ot Weed, Witters & Co., as consignees, were entitled to a lien upon the entire shipments of the respondent to cover their advances, and were not obliged to sever, and sell any special shipments, such advances being unpaid, and that until they were paid the factors could protect their lien upon the accumulated shipments. The authorities cited in support of this proposition undoubtedly sustain the doctrine that a factor or other party having a lien upon goods in his possession as security for a debt or other liability, is not bound to part with the goods or any portion of them to the detriment of his secu We recognize this doctrine, but it fails to relieve the i-tioner. The factors were not required to part with any portion of their security without an equivalent in cash, and which was immediately available in payment of the debt secured. The instructions contemplated an appropriation of the security to that end. As the price of cotton was constantly declining, each sale would have increased rather than have diminished the relative value of the remaining security.

We cannot perceive that the grant of a special lien upon the crops of the plantation before consignment, conferred upon the consignees any additional rights and powers after the consignment was actually made.

We advise the Superior Court to dismiss the bill.

In this opinion the other judges concurred.