FORDYCE, Assignee, etc., *v.* PEPER.* (On Bill.)

PEPER and others *v.* FORDYCE, Assignee, etc. (On Cross-Bill.)

*(Circuit Court, E. D. Arkansas. April Term, 1883.)*

1. FACTOR—RIGHT OF SALE FOR ADVANCES.

A factor who has made advances on the credit of the goods consigned to him for sale, has a right to sell enough to reimburse his advances, unless restrained by some agreement with his consignor.

2. SAME—AGREEMENT TO HOLD FOR CERTAIN TIME.

If a cotton factor for a sufficient consideration agrees to hold the cotton of a consignor until the opening of the market the next year, he is bound to do so; and if he sells the cotton before that time without the consent of the consignor, he is liable for the difference between the price at the time he sold and the price at the time he was authorized to sell.

3. SAME—FRAUD OR GROSS NEGLIGENCE OF.

A factor or other agent, who is guilty of fraud or gross negligence in the conduct of his principal's business, forfeits all claim to commission or other compensation for his services.

4. SAME—FALSE ACCOUNT OF SALES.

Where a factor knowingly transmits to his consignor a grossly false and fraudulent account of sales, and does not enter the sales on his books until months after they were made, and then enters them falsely, no credit will be given to the factor or his books.

In Equity.
*E. W. Kimball* and *G. W. Murphy*, for plaintiffs.
*Wm. G. Whipple* and *G. H. Latta*, for defendants.

*Reversed. See 7 Sup. Ct. Rep. 287.

CALDWELL, J. In 1880, and for some years prior thereto, W. A. Moore carried on business as a merchant at Hot Springs. In its season he handled cotton, which he consigned for sale to factors in St. Louis and elsewhere. The defendant Peper was a cotton factor, doing business in St. Louis, and in the fall of 1880 he opened negotiations with Moore for the consignment of the latter's cotton for that year. The parties arrived at an agreement on the subject, as to the terms of which they now differ widely. During the cotton season Peper advanced to Moore large sums of money, and the latter shipped to the former 929 bales of cotton and other articles. On the tenth day of January, 1881, Moore executed to Peper & Co. three notes, each for $2,433.46, drawing 10 per cent. interest from date, and due in 90 days, and 6 and 9 months, respectively; and on the same day executed deeds of trust on real property to secure their payment. These notes and one dated January 13, 1881, for $100, and the deeds of trust to secure them, do not represent any transaction or debt separate and distinct from the advances charged to Moore in the account current. They were taken to secure advances made and to be made, and were to stand as a security for any balance due from Moore to Peper on final adjustment of their accounts. On the sixteenth of May, 1881, Moore failed, and made an assignment of his property to the plaintiff Fordyce for the benefit of his creditors. As soon as Peper was advised of Moore's failure, he directed a foreclosure of the deeds of trust, and the trustee named in the deeds advertised the property for sale on the fourteenth of June, 1882. Thereupon, the plaintiff Fordyce filed the bill in this case for an injunction and accounting, alleging in substance that upon a fair and honest adjustment of the accounts between Moore and Peper, according to the terms of the contract between them, there would be nothing due the latter, but a large sum due Moore, and charging Peper with various frauds in the conduct of the business. Peper filed an answer, denying the allegations of the bill; and a cross-bill, praying for a foreclosure of the trust deeds.

The first cotton shipped by Moore to Peper, amounting to 67 bales, was sold in December, 1880, and an account of sales rendered, to which no exception is taken. The contention relates to the remaining 862 bales. In July, 1881, Peper transmitted to the assignee of Moore an account of sales, showing that 858 bales had been sold on the sixteenth day of June at $9\frac{1}{8}$ cents a pound. This account of sales is conclusively shown to be grossly fraudulent. It is proven—indeed, Peper and his clerk are compelled to admit the fact—that instead of

858 bales having been sold on the sixteenth of June for 9⅛ cents per pound, 258 bales of that number had in fact been sold on the fourteenth of February for 11⅛ cents per pound. No entry of the sale of the 258 bales on the fourteenth of February was ever made in Peper's books, and no account of the sale was rendered. On the contrary, Peper wrote Moore, after the sale, that he was holding all his cotton, and when he sold the remaining 600 bales on the sixteenth of June, at 9⅛ cents a pound, he transmitted an account of sales showing the sales of the whole 858 bales on that day, and at the prices of that day, charging Moore insurance and storage on the whole 858 bales down to that date. The 258 bales had been sold and delivered on the fourteenth of February, and Peper had received the money for it at the rate of 11⅛ cents per pound; but no credit was given to Moore, and he was charged with interest on all advances made to him for the period from the fourteenth of February to the sixteenth of June, as though none of his cotton had been sold. This was not an oversight or mistake. It was purposely and knowingly done, and was, therefore, a willful and deliberate fraud. When Peper directed his clerk to transmit an account of sales showing the sale of all the cotton on the sixteenth of June at the prices of that day, the latter called his attention to the fact that 258 bales of the cotton had been sold four months before for two cents a pound more than was realized for that sold on the sixteenth of June, to which Peper responded he had "a carte blanche to sell it." Neither Peper nor his clerk are able to invent a plausible pretext or excuse for this fraud. The difference in the price of cotton at the time the 258 bales were sold and the time it was reported sold, and storage and insurance, and interest on the proceeds of the sale for the like period, amounts to nearly $2,000.

It is shown that no entry relating to the sale of the 858 bales of cotton appears on the defendant's books prior to July. These facts utterly discredit Peper and his books. The preponderance of evidence establishes the fact that Peper agreed, in consideration that Moore would ship him his cotton and execute the deeds of trust to secure advances, to hold the cotton until the full opening of the cotton market in the fall of 1881, unless Moore should order it sold before that time. Having agreed with Moore upon sufficient consideration to hold the cotton, he was bound to do so. It is undoubtedly the law that a factor who has made advances on the credit of the goods has a right to sell enough to reimburse his advances unless restrained by some agreement with his consignor. *Weed* v. *Adams*, 37 Conn. 378; *Feild*

v. *Farrington*, 10 Wall. 141. Peper was restrained by the terms of his contract with Moore from selling the cotton before the opening of the cotton market in the fall of 1881. Moore is entitled to the benefit of this contract. Neither Moore nor Fordyce, his assignee, ratified this sale, but protested against it, and have continued to protest. Peper must account to the plaintiff for the difference in the price of cotton at the time it was sold and the price in the fall of 1881.

There is also a wide discrepancy in the accounts of the respective parties growing out of differences in weights, grade, and condition of the cotton. Ths clear weight of the evidence is with the plaintiff on all these points. The difference between the parties aggregates a large sum. Moore claims and testifies that Peper owes him $6,760, and Peper claims and testifies that Moore owes him $10,000. The accounts and claims on both sides have been carefully examined in the light of the evidence and the law. It would serve no useful purpose to enter into a detailed statement of the accounts and point out each item of difference. The true state of the accounts between the parties, upon the facts as found and the law, is shown in the statements and exhibits appearing in and attached to the deposition of the accountant, Mr. Convers. This witness is disinterested, and is an honest and competent accountant and book-keeper. He had access to the books and papers of both parties, and his statement of the accounts is based on facts clearly established by the evidence. From these statements it appears that if the defendant had complied with his contract, and held the cotton until the opening of the market in 1881, and sold then and accounted for the proceeds according to the actual weight, grade, and condition of the cotton, there would have been nothing due him from Moore, but a small sum due to the latter. The only point of difference between the parties which is left in doubt by the evidence relates to the rate of interest Moore was to pay. He claims he was to pay only 8 per cent., while Peper claims he was to pay 10. The fact that the notes draw 10 per cent. is a strong circumstance to show that from their date, at least, balances were to draw that rate. In the statements of Mr. Convers, interest is calculated at 8 per cent.; but if the additional 2 per cent. be allowed the defendant, it is more than overcome by an error made in allowing commissions to the defendant in the statement of the accounts. The defendant charges $966.90 for commissions, and this item is allowed to him in Mr. Convers' statement of the accounts.

It is a settled rule of law that a factor or other agent who is guilty of fraud or gross negligence in the conduct of his principal's business

forfeits all claim to commissions or other compensation for his services. Story, Ag. §§ 333, 334; 1 Pars. Cont. 99; *Segar* v. *Parrish*, 20 Grat. 672; *Vennum* v. *Gregory*, 21 Iowa, 326; *White* v. *Chapman*, 1 Starkie, 113; *Hammond* v. *Holiday*, 1 Car. & P. 384; *Denew* v. *Daverell*, 3 Camp. 451; *Hurst* v. *Holding*, 3 Taunt. 32; *Hill* v. *Featherstonhaugh*, 7 Bing. 569; *Turner* v. *Robinsons*, 6 Car. & P. 16; *Smith* v. *Crews*, 2 Mo. App. 269; *Brannan* v. *Strauss*, 75 Ill. 234. In this case the defendant deliberately returned a grossly-fraudulent account of sales, kept false books, and sold plaintiff's cotton in violation of his contract. These frauds and misconduct made it necessary for the plaintiff to resort to a court of equity for an accounting. On these facts, the defendant is not entitled to commissions or other compensation for his services.

Allowing the defendant interest at the rate of 10 per cent. and deducting his commissions, the balance is still in favor of the plaintiff. But the plaintiff is not entitled to a decree for this balance, because it about equals the amount of the small notes received by the defendant as collateral, and which are charged to him in the statement of the accounts, but which have not been collected. These notes, being six of W. H. Groves for $50 each, and one of Bill for $32.48, may be retained by the defendant.

Let a decree be entered on the original bill perpetually enjoining the defendants from foreclosing, by sale by trustee or otherwise, the deeds of trust mentioned in the bill, and requiring the defendants to surrender said deeds and the notes of the plaintiff Moore for cancellation; and dismissing the cross-bill of Peper for want of equity, and requiring him to pay all costs.

---

A factor has implied authority to sell in his own name.(*a*)   A general consignment to a factor imports an authority to sell according to the usages of trade.   But the consignor may at the time of the shipment or afterwards, if before the sale, impose terms as to time and price, to which the factor must conform; and if he disobeys such instructions, he will be liable for any damages resulting from his disobedience.(*b*)

Unless restrained by instructions, a factor who has made advances may sell so much as is necessary to reimburse himself without special instructions.(*c*)   His right to sell may, however, as in the principal case, be controlled by a special agreement fixing the time or price; and in such case he

(*a*) Baring v. Corrie, 2 Barn. & Ald. 137; Graham v. Duckwall, 8 Bush, 12.

(*b*) Evans v. Root, 7 N. Y. 186; Courcier v. Ritter, 4 Wash. C. C. 549; Bell v. Palmer, 6 Cow. 128; Scott v. Rogers, 31 N. Y. 676; Marfield v. Good-hue, 3 N. Y. 62; Blot v. Boiceau, 3 N. Y. 78; Cotton v. Hiller, 52 Miss. 7; Van Alan v. Vanderpool, 6 Johns. 70; Goodenow v. Tyler, 7 Mass. 36.

(*c*) Blackmar v. Thomas, 28 N. Y. 67; Brown v. McGran, 14 Pet. 479.

may not sell even to reimburse himself for advances, except in accordance with such agreement.(*d*)

The right of the owner to impose terms as to time or price is restricted, if he has drawn against the consignment before the instructions are given; and he cannot in that case control the factor as to time of sale or price, unless he pays the factor his advances made or liabilities incurred. The factor has by such advances or liabilities acquired a special property, and may sell so much as will reimburse him.(*e*)   The factor should not, however, sell below the price named in his instructions, even where he has made advances, without first calling upon his principal to refund the advances so made.(*f*)

The factor may also sell, even contrary to instructions, when the consignor fails to keep up "the margins" over advances.(*g*)   So, when the goods upon which advances have been made, if sold when the orders were given, would not bring the sums advanced, or where such sale would otherwise prejudice the factor.(*h*)

The right of the factor to sell is limited to the protection of his own interest in property; and, if he sells more than is necessary for that purpose, contrary to the orders of his principal, he is liable for the loss incurred.(*i*)

The rule that an agent is entitled to his commissions only upon a due and faithful discharge of all the duties of his agency in regard to his principal, and therefore that if he is guilty of gross negligence, gross misconduct, or gross unskillfulness in the management of his agency he will forfeit his right to commissions, is well settled.(*j*)   Among the duties above referred to is that of keeping regular accounts; and an agent who fails to account, or who renders false and fraudulent accounts, ought, as it seems, to forfeit his commissions; and so the doctrine is usually stated.(*k*)   Mere irregularity, however, in the account will not suffice to work such forfeiture.   If the agent can make out his claim by satisfactory evidence, he will be paid.(*l*)

As to the decision in the principal case, it seems to the writer that there can be no question as to its entire correctness upon every point stated; and the case, as a whole, is a happy illustration of that entire harmony which ought always to exist between law and justice.                M. D. EWELL.

*Chicago, June* 9, 1883.

(*d*) Smart v. Sanders, 3 Man., Gr. & Sc. 380; Milliken v. Dehon, 27 N. Y. 364. See, also, Raleigh v. Atkinson, 6 M. & W. 670; Brown v. McGran, supra; Frothingham v. Evertson, 12 N. H. 239.

(*e*) Cotton v. Hiller, supra; Weed v. Adams, 37 Conn. 378; Brown v. McGran, 14 Pet. 479; Mooney v. Musser, 45 Ind. 115.

(*f*) Marfield v. Goodhue, 3 N. Y. 62; Blot v. Boiceau, 3 N. Y. 78; Frothingham v. Evertson, 12 N. H. 239.

(*g*) Hornsby v. Fielding, 10 Heisk. 367; Moeller v. McLagan, 60 Ill. 317; Kraft v. Fancher, 44 Md. 204.

(*h*) Blair v. Childs, 10 Heisk. 199; Howland v. Davis, 40 Mich. 545.

(*i*) Weed v. Adams, supra.

(*j*) Story, Ag. §§ 331, 332; Sea v. Carpenter, 16 Ohio, 412; Dodge v. Tileston, 12 Pick. 328; Fisher v. Dynes, 62 Ind. 348.

(*k*) See Evans, Ag. *250; Story, Ag. § 332; Willard, Eq. Jur. *104; Smith v. Crews, 2 Mo. App. 269, and the cases cited in the principal case. See, however, Sampson v. Somerset Iron Works, 6 Gray, 120; Beall v. January, 62 Mo. 434.

(*l*) Evans, Ag. *250; Williard, Eq. Jur. *104.