GOLDBERGER *v.* PHILADELPHIA GROCER PUB. CO.

*(Circuit Court, S. D. New York.   April 15, 1890.)*

LIBEL.
    A published statement to the effect that plaintiff was not actuated by patriotism or love of his guild in soliciting subscription for a world's fair from the tradesmen in his line of business, but by the desire to earn a salary of $2.50 per day, is not libelous *per se.*

At Law. On demurrer to complaint.
*Isaac N. Falk,* for plaintiff.
*Henry Galbraith Ward,* for defendant.

SHIPMAN, J.   This is a demurrer to the plaintiff's complaint in an action at law to recover damages for an alleged libel. The complaint alleges that "plaintiff is a grocer, doing business in the city of New York, and is also president of the 'New York Retail Grocers' Union,' an organization devoted to the interests of New York grocers and their trade, and is also, by appointment" of the mayor of the city of New York, a member of the "Committee for the International Exposition of 1892," an honorary committee, appointed by said mayor to institute and operate an international exposition in the city of New York, and is the person referred to in the libelous matter as the "presiding officer of the New York union." The article which is alleged to be libelous is as follows:

"I heard the other day a story in relation to the subscriptions of the retail grocers to the World's Fair fund, which, while it may be all right, since every laborer is worthy of his hire, does seem very much out of place under the circumstances. It appears that the presiding officer of the New York Union was not actuated by patriotism or love of his guild in obtaining these subscriptions, but that the main spring of his exertions was a *per diem* allowance of $2.50; for, though I saw no report of the matter, I am creditably informed that he presented a bill for $22.50 for eighteen days' service at the rate mentioned. I do not know what disposition was made of the matter, but hope that the pay was increased to at least five dollars a day, since that kind of work is worth certainly the figure we mention. *O tempora! O mores!* What

a pity that the grocers of this city could not find one so unselfish as to do such a work without the hope of gain giving birth to activity."

No special damage is alleged. The demurrer is upon the ground that the complaint does not state facts sufficient to constitute a cause of action, and the position of the defendant is that the publication is not libelous *per se*, and is not the ground of an action, unless special damages are alleged to have resulted from the publication. The definitions of a libel are well known. The one given by Chief Justice PARSONS, in *Com.* v. *Clap*, 4 Mass. 168, which is succinct, clear, and probably as precise as the subject will permit, is as follows:

"A libel is a malicious publication, expressed either in printing or writing, or by signs and pictures, tending either to blacken the memory of one dead, or the reputation of one who is alive, and expose him to public hatred, contempt, or ridicule. Any words will be deemed defamatory which expose the plaintiff to hatred, contempt, ridicule, or obloquy; which tend to injure him in his profession or trade, or cause him to be shunned or avoided by his neighbors." Odger, Sland. & Lib. 19.

There is nothing in the publication of which the plaintiff complains which reflects upon his integrity, upon his business, moral, or social character, or which imputes conduct of a fraudulent or dishonorable kind. It is, however, claimed that the article holds him up to contempt or ridicule, because, although president of the New York Retail Grocers' Union, he obtained subscriptions for the World's Fair from the retail grocers for a small compensation, to be paid by the union for the time which was spent in this service. This claim calls for the consideration of the question whether any published sneer or pleasantry which may create a smile at the expense of a plaintiff, but which criticises his conduct in no important particular, is libelous *per se*. In the case of *Stone* v. *Cooper*, 2 Denio, 293, the defendant had said, in a contemptuous article in regard to the plaintiff, that "we are not disposed to allow him to put it [the amount of an award against the defendant] into Wall street for shaving purposes before" the last day allowed by the award. Chancellor WALWORTH, in giving his opinion in the court of errors upon the question of the libelous character of the publication, said:

"Still, it is not every false charge against an individual, even when the same is deliberately reduced to writing and published to the world, which is sufficient to sustain a private action to recover a compensation in damages as for libel. * * * But to sustain a private action for the recovery of a compensation in damages for a false and unauthorized publication, the plaintiff in such action must either aver and prove that he has sustained some special damage from the publication of the matter charged against him, or the nature of the charge itself must be such that the court can legally presume he has been degraded in the estimation of his acquaintances or of the public, or has suffered some other loss either in his property, character, or business, or in his domestic or social relations, in consequence of the publication of such charge. Where, from the nature of the charge, therefore, in connection with other facts stated in the plaintiff's declaration, no such injury or loss will necessarily, or even probably, result to him in consequence of the publication of such charge, he cannot recover damages as for a libel, without averring and proving that special damage has been in fact sustained by him in consequence of the publication of the false and unfounded charge."

·This language virtually says that a sneer in the columns of a newspaper is not sufficient to sustain a private action for damages, when it conveys or insinuates no charge from which a court can infer that the plaintiff has been, or ought to be, degraded in the estimation of the public, and when no special damage is averred. In somewhat the same line of thought it has been held that it is not actionable to publish of a man that he pleaded the statute of limitations against a debt theretofore admitted to be just, or that he shielded himself against the payment of a debt for liquors by the defense that the sale of liquors was prohibited by statute. The article in question asserts, in substance, that the retail grocers' union had promised to pay the plaintiff, who was their president, a small compensation for the time which he spent in collecting subscriptions among the members of the union for the World's Fair, and that he was prompted to spend his time and obtain subscriptions by this *per diem* allowance, and that he had presented a bill of $22.50 for 18 days' service, and that in thus doing he was not actuated by patriotism or love of his guild, but by the stimulus of this compensation. The correspondent says' that the action may be all right, but seems very much out of place. All that is charged is that the society thought proper to offer a slight remuneration for the services and expenses of a person who was to spend his time in a cause which it considered important; that he entered upon the service under that promise; that he presented a bill which the correspondent considers very small; that the correspondent is of the opinion that the transaction was unpatriotic; and that it was a pity that the grocers could not have obtained a person so unselfish as to do such work for nothing. The action of the society and of the plaintiff was legal and proper. They each recognized that the plaintiff could not be called upon to give up considerable time without some compensation for the outlay. He charged less than he was authorized to do, for he had a right to an allowance of $2.50 a day, while for 18 days' services he charged $1.25 per day. The article is a sneer at the plaintiff, but I cannot perceive, special damage not being averred, that it says anything which can properly dishonor or degrade or injure him in the estimation of his acquaintances or the public, or cause him to suffer loss in property, character, business, or in his social relations.

The demurrer is sustained.