DUN et al. v. MAIER et al.

(Circuit Court of Appeals, Fifth Circui.. June 16, 1897.)

No. 571.

1. LIBEL—PLEADING—WHEN SPECIAL DAMAGES MUST BE ALLEGED.
    Where words published are not libelous per se, special damages must be alleged.

2. SAME—WORDS NOT ACTIONABLE.
    A mercantile agency, under the head of "Record Items," in the Weekly Change Sheet furnished to its subscribers, published the following words: "Atlanta: Maier & Berkele: M. Berkele gives R. E. deeds, $4,100. Jewelry;" meaning thereby that said firm was in the jewelry business, and that the Berkele thereof had conveyed to others real estate to the value of $4,100. *Held*, that the words were not susceptible of the construction placed on them by an innuendo charging their meaning to be that the conveyance had diminished to that extent the property accessible to creditors of said firm, and were not actionable per se.

In Error to the Circuit Court of the United States for the Northern District of Georgia.

This suit was brought by Maier & Berkele, a mercantile firm composed of Herman A. Maier and John Berkele, who are defendants in error, against R. G. Dun & Co., a firm composed of Robert G. Dun, Arthur J. King, and Robert D. Douglass, who are plaintiffs in error, to recover damages for alleged libelous matter published by the latter firm concerning the said John Berkele. The declaration filed by the defendants in error set forth the cause of action in the following language: "(2) Your petitioners were on January 31, 1894, and for a considerable period theretofore had been, and now are, merchants engaged in conducting a wholesale and retail jewelry business in the city of Atlanta and said state, and doing an extensive trade in that line. (3) Your petitioners were then and are now using in the purchase of goods for their business, and raising money for its need, a large mercantile credit, to which they were and are entitled by virtue of their solvency and prompt and honest dealing with their creditors. (4) The defendants were on the day and year aforesaid, and had been continuously for many years before, conducting what is commonly known as a 'commercial agency,' the design and actual use of which is to collect and disseminate among merchants, bankers, and others interested in the matter, throughout the United States, information respecting the commercial standing and credit of those engaged in any department of trade requiring the use of credit. This information is communicated to those only who contract for the same with said defendants, and is sent out, among other means, in the form of written or printed reports, and a publication issued weekly, and entitled, 'The Mercantile Agency Weekly Change Sheet.' The defendants had then a great number of subscribers for their reports and publications in all the markets of this country. (5) On the day and year aforesaid the defendants had a branch office in the city of Atlanta and said state, and were engaged in sending out from said office such reports as are in the preceding paragraph described, and the publication therein mentioned for the purposes therein specified. (6) The defendants on the day and year aforesaid, and in the city aforesaid, issued and circulated among its subscribers a copy of the said publication, wherein they, for the purpose of injuring the commercial credit of your petitioners, and being moved thereto by malice against them, inserted, under the head of 'Record Items,' in one column of said publication, the following false statement as to your petitioners, to wit: 'Atlanta: Maier & Berkele: M. Berkele gives R. E. deeds, $4,100. Jewelry;' meaning thereby that said firm was in the jewelry business, and that the Berkele thereof had conveyed to others real estate belonging to him of the value of $4,100, and thus diminished to such an extent the property accessible to creditors of said firm for the payment of debts due them. (7) During the year 1893 your petitioners, with others in

like business in said city, had formed and had in operation a voluntary association known as the 'Jewelry Association,' the object of which was the promotion of their interest in the line of trade carried on by them. On the —— day of December in said year, at a meeting of said association, the matter under discussion being whether the association should subscribe for the reports of the commercial · agencies represented in said city, one of your petitioners, the said Berkele, in some remarks made by him, questioned the expediency of such subscription. On the day thereafter, in said city, one Elmer R. Kirk, the canvasser of defendants therein, having heard of such remarks, said to a member of said association, and while speaking of them and the subject to which they related, that if he ever had an opportunity to do up your petitioners, he would do so, because of such remarks. Your petitioners allege that the false and malicious statement concerning them published as aforesaid was in pursuance of such threat. (8) Your petitioners allege that the false and malicious statement as to them set out in the sixth paragraph above is of such a nature as to impair their credit in the commercial world, and therefore they say that they have been injured and damaged as aforesaid."

The plaintiffs in error demurred to the declaration on several grounds, which are hereinafter fully noted in the opinion of the court. The demurrers were overruled, and thereupon the plaintiffs in error filed their plea, in which they set up their several defenses to the suit. Subsequently the defendants in error filed three amendments of their declaration, as follows:

First amendment: "And now come the plaintiffs in the above-stated case, and amend the declaration therein, and say that in addition to the general damages suffered by them because of said libel, as already set forth, they sustained special damages in the sum of one thousand dollars, because of the following state of facts: That, at the date of said publication, plaintiffs were conducting business at two stores on Whitehall street, in the city of Atlanta; that they had determined to close one of the stores, and for this purpose to dispose of the goods there at auction; that they had fixed upon February 15, 1894, as the time when such auction should begin, but that because of the apprehension excited in their minds by such publication that such a sale would be understood as evidence of failing condition, and impair their standing with their creditors and with the commercial world, they delayed such sale for six weeks; and that by reason of such delay they were subjected to an expense of one thousand dollars because of the rent of the store which they desired to close, the hire of clerks for the same, and the bills for gaslight and other incidentals connected with the carrying on of said store."

Second amendment: "And now come the plaintiffs, and amend the amendment heretofore made, wherein they claim of defendants special damages, as follows:

"(1) By striking out after the words 'but that,' in the eleventh line of such amendment, the clause, 'because of the apprehension excited in their minds by such publication,' and inserting in place thereof the following: 'because such publication was of a character to excite in the mind of a man of ordinary prudence, and did excite in the minds of plaintiffs, an apprehension,'—so that the sentence as amended shall read as follows: 'That, at the date of the publication, plaintiffs were conducting business at two stores on Whitehall street, in the city of Atlanta; that they had determined to close one of the stores, and for this purpose to dispose of the goods there at auction; that they had fixed upon February 15, 1894, as the time when such auction should begin, but that because such publication was of a character to excite in the mind of a man of ordinary prudence, and did excite in the minds of plaintiffs, an apprehension that such sale would be understood as evidence of failing condition, and impair their standing with their creditors and with the commercial world, they delayed such sale for six weeks; and that, by reason of such delay, they were subjected to an expense of one thousand dollars because of the rent of the store which they desired to close, the hire of clerks for the same, and the bills for gaslight and other incidentals connected with the carrying on of said store.'

"(2) By appending to said amendment the following bill of the items constituting the expense alleged to be one thousand dollars, to wit:

| | | |
|---|---|---|
| Rent of store proposed to be closed | $300 | 00 |
| Gas and electric light | 25 | 00 |
| Salary of J. C. Mellichamp as bookkeeper | 85 | 00 |
| Salary of Walter Ballard as salesman | 100 | 00 |
| Salary of J. W. French as salesman | 50 | 00 |
| Salary of Miss May Archer as saleslady | 35 | 00 |
| Salary of J. C. Rivers as collector | 50 | 00 |
| Salary of Flewellyn Fluker as porter | 22 | 00 |
| | $667 | 00 |

Third amendment: "Now come the plaintiffs in the above-stated case, and amend the second amendment filed by them under date of May 28, 1896, by striking therefrom the clause, 'and for this purpose to dispose of the goods there at auction' (this clause beginning in the thirteenth line), and to insert in lieu thereof the following: 'and concentrate their entire business in the other store; that this other store was entirely sufficient for the business done in both, and in it such two businesses could be conducted with the same facility and success as in the two stores; that, for the purpose of so closing the one store, they had decided to dispose of the goods there at auction"; and by adding at the end of the twenty-fifth line the following: 'and this expense was a loss to petitioners, in that it was made necessary solely because of such delay,'—so that the paragraph thus amended shall read as follows: 'That, at the date of the publication, plaintiffs were conducting business at two stores on Whitehall street, in the city of Atlanta; that they had determined to close one of the stores, and concentrate their entire business in the other store; that this other store was entirely sufficient for the business done in both, and in it such two businesses could be conducted with the same facility and success as in the two stores; that, for the purpose of so closing the one store, they had decided to dispose of the goods there at auction; that they had fixed upon February 15, 1894, as the time when such auction should begin, but that because such publication was of a character to excite in the mind of a man of ordinary prudence, and did excite in the minds of plaintiffs, an apprehension that such sale would be understood as evidence of failing condition, and impair their standing with their creditors and with the commercial world, they delayed such sale for six weeks; and that by reason of such delay they were subjected to an expense of one thousand dollars because of the rent of store which they desired to close, the hire of clerks for the same, and the bills for gaslight and other incidentals connected with the carrying on of said store, and this expense was a loss to petitioners, in that it was made necessary solely because of such delay."

And for further amendment the plaintiffs strike from the second line of the first amendment, under date of May 28, 1896, these words, "in addition to the general," and substitute these words as a part thereof, so that the first sentence will read: "And now come the plaintiffs in the above-stated case, and amend the declaration therein, and say that as a part of the damages suffered by them because of said libel, as already set forth," etc.

Demurrers interposed by the plaintiffs in error to the amendments were overruled by the court, and on the issues joined the cause was submitted to the jury, who returned a verdict in favor of the defendants in error, and judgment was duly entered thereon. To reverse the judgment this writ of error is prosecuted.

Walter R. Brown, John L. Hopkins, and T. M. Miller, for plaintiffs in error.

Marshall J. Clarke, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

MAXEY, District Judge, after stating the case, delivered the opinion of the court.

The ninth specification of error challenges the correctness of the action of the circuit court in overruling the demurrers of the plain-

tiffs in error to the original declaration and to the three amendments thereof. The demurrer to the original declaration contains several grounds of objection; inter alia, the two following:

(1) "The language of the alleged libel as stated is not libelous per se, and there is no averment in the petition of special damage to the petitioners by reason of the alleged publication of it." (2) "The innuendo is null and void, inasmuch as it undertakes to enlarge and wholly change the meaning of the words of the alleged libel as set out in the petition."

The question presented for consideration is whether the words used in the publication are libelous per se. If they are, the uniform current of authority authorizes the recovery of general damages, and no special damage need be averred. If, however, the words published are not actionable per se, it was incumbent on the defendants in error to make the necessary averments of special damage to warrant a recovery. Stone v. Cooper, 2 Denio, 293; Woodruff v. Bradstreet Co., 116 N. Y. 217, 22 N. E. 357; Newbold v. The J. M. Bradstreet & Son, 57 Md. 38; Hirshfield v. Bank, 83 Tex. 452, 18 S. W. 743; Goldberger v. Grocer Pub. Co., 42 Fed. 42; Walker v. Tribune Co., 29 Fed. 827; Townsh. Sland. & L. § 289; Odgers, Sland. & L. 290, 291; 13 Am. & Eng. Enc. Law, 434, 435. It is alleged in the declaration that the plaintiffs in error published in the Mercantile Agency Weekly Change Sheet, and circulated among their subscribers, the following false statement as to the defendants in error: "Atlanta: Maier & Berkele: M. Berkele gives R. E. deeds, $4,100. Jewelry;" "meaning thereby," the declaration further alleges "that said firm was in the jewelry business, and that the Berkele thereof had conveyed to others real estate belonging to him of the value of $4,100, and thus diminished to such an extent the property accessible to creditors of said firm for the payment of debts due them." The publication of the words set out in the declaration is admitted by the demurrer, and it is conceded by counsel for the plaintiffs in error that, by the use of the words appearing in the Weekly Change Sheet, the plaintiffs in error intended, as the innuendo charges, to convey the meaning that M. Berkele was a member of the mercantile firm of the defendants in error, and that he had conveyed real estate of the value of $4,100. But the effect attributed to the words in the concluding part of the innuendo is denied by the plaintiffs in error, who insist that the words are innocent in themselves, and do not imply that Berkele, by the sale of real estate, had diminished to any extent the property accessible to his creditors. And they further contend that the court cannot presume that the words, as ordinarily and properly understood, would injure Berkele or the defendants in error in their business, or reflect upon their character as merchants. "It is the office of an innuendo to define the defamatory meaning which the plaintiff sets on the words, to show how they came to have that defamatory meaning, and also to show how they relate to the plaintiff, whenever that is not clear on the face of them. But an innuendo may not introduce new matter, or enlarge the natural meaning of words. It must not put upon the defendant's words a construction which they will not bear. If the words are incapable of the meaning ascribed to them by the innuendo, and are prima facie not actionable, the declaration will be held bad

on demurrer, or if there be no demurrer, the judge at the trial will stop the case." Odgers, Sland. & L. 100, 101; 13 Am. & Eng. Enc. Law, 463, 464; Townsh. Sland. & L. § 335. See, also, Railway Co. v. McCurdy, 114 Pa. St. 554, 8 Atl. 230; Stitzell v. Reynolds, 59 Pa. St. 488. The question is, do the published words, giving them their natural and ordinary meaning, bear the construction ascribed to them by the innuendo? To publish of a merchant anything which imputes insolvency, a fraudulent disposition of his property, or a want of integrity in his business, is libelous per se, because the publication, in legal contemplation, tends to injure his business credit and standing. Newbold v. The J. M. Bradstreet & Son, supra. But, as properly said by Chancellor Walworth in Stone v. Cooper, supra:

"It is not every false charge against an individual, even when the same is deliberately reduced to writing and published to the world, which is sufficient to sustain a private action to recover a compensation in damages as for a libel. * * * To sustain a private action for the recovery of a compensation in damages for a false and unauthorized publication, the plaintiff in such action must either aver and prove that he has sustained some special damage from the publication of the matter charged against him, or the nature of the charge itself must be such that the court can legally presume he has been degraded in the estimation of his acquaintances or of the public, or has suffered some other loss, either in his property, character, or business, or in his domestic or social relations, in consequence of the publication of such charge."

In the present case the words published are harmless in themselves, and have a plain and unambiguous meaning. They certainly do not directly impute to Berkele any fraud, dishonesty, or misconduct in the management of his business, or in any matter connected therewith; and it would require a strained and unnatural construction of the words for the court to presume that their tendency was to injure Berkele, much less the firm of the defendants in error, in his business as a merchant. The legal presumption is in favor of honesty and uprightness in business transactions, and the adoption of the construction placed by the defendants in error upon the words in question would require a reversal of that salutary rule, and stamp as dishonest and fraudulent a sale of real estate, simply because it was made by a person engaged in mercantile pursuits. We refrain from going to that extent, as we appreciate too highly the value of commercial character, and the necessity of preserving it untarnished. Upon this branch of the case our conclusion is that the matter set out in the declaration as defamatory is not libelous per se, and that special damage should have been averred, to authorize a recovery. This conclusion is clearly supported by the cases of Newbold v. The J. M. Bradstreet & Son, 57 Md. 38, and Woodruff v. Bradstreet Co., 116 N. Y. 217, 22 N. E. 354, to which we refer.

In reference to the action of the circuit court in overruling the demurrers to the three amendments of the declaration, little need be said. While the demurrers were formally overruled, the court stated, during the progress of the trial, that the question of special damages would be withdrawn from the jury, and the charge of the court instructed them to award general damages only. Although the action of the court in overruling the demurrers to the amendments was erroneous, because the damages therein claimed were too remote to

be considered, and it was so conceded by counsel for defendants in error on the argument, it was harmless error, resulting in no injury to the plaintiffs in error. As a matter of correct practice, however, the demurrers should have been sustained.

In view of the disposition which we have made of the demurrers to the original declaration, we deem it unnecessary to discuss other questions argued by counsel. For the error of the circuit court in overruling the demurrers of the plaintiffs in error to the declaration and amendments thereof, the judgment is reversed and the cause remanded. Reversed and remanded.