# Labor Review Publishing Company v. Galliher.

## Libel.

### (Decided Dec. 19, 1907. 45 So. Rep. 188.)

1. *Libel; Action; Pleading; Innuendoes.*—Where plaintiff in a libel suit by innuendo ascribed to a publication a certain meaning, he is bound thereby, and unless its correctness is found as laid, his action fails.

2. *Same; Construction of Language.*—In construing libelous publications the whole must be considered and that construction must be given it which will accord to the words used their plain and popular sense—such meaning as is most natural and obvious, and in which the public understands them.

3. *Same; Unfair List.*—A notice in the newspaper devoted to the interest of organized labor that plaintiff, a contractor, had been placed on the unfair list by a certain labor union, and that the paper had instructions to publish the list until the parties named therein had decided to square themselves with organized labor, did not by the use of the term, "unfair list," when taken in connection with other parts of the publication, and when viewed with reference to its use by a labor organization, impute to plaintiff dishonesty, faithlessness to contract and unreliability, nor that he was undeserving of the confidence of the public, but meant that he was in the list of persons unfriendly to or rebellious against the rules and authority of organized labor.

APPEAL from Anniston City Court.

Heard before Hon. Thomas W. COLEMAN, Jr.

Action for libel by J. W. Galliher against the Labor Review Publishing Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The libelous matter is set out in the opinion of the court, and as set out was contained in the first count, which was stricken on demurrer. The other counts in the complaint were as follows: "(2) Plaintiff claims of defendant the other and further sum of $5,000 as damages for falsely and maliciously publishing of and concerning the plaintiff the matter set out in the first count of the complaint as therein alleged, and which is made a part hereof. Plaintiff avers that he is now, and was at the time of said publications, engaged in the business of taking contracts from the public for the construction of houses and other structures. To carry out his said contract it was necessary for plaintiff to employ in such work a large number of mechanics. And plaintiff avers that by said publication the defendants meant to say that plaintiff was unfair in his dealings and settlements with his employes, and thus prevent plaintiff from employing the mechanics whose services were necessary in carrying out and performing his said contract, whereby the plaintiff has been damaged," etc. (3) Same as 2, down to and including the words "buildings and other structures," and adding: "That the said defendants meant by making such publication to say to the public that this plaintiff was unfair and dishonest in carrying out his contract for his customers, and thereby prevent plaintiff from securing contracts for the erection of buildings and other structures. And plaintiff avers that by reason of such publication he has been injured in having the public to believe from such publication that he was unfair and dishonest in performing said contract." (4) Same as 2, down to and including the words "a part hereof" and adding: "And plaintiff avers that said defendant meant and intended by such publication that the plaintiff was unfair and dishonest in his dealings, would not comply with his contracts, would

not make fair and honest settlements in his business contracts and agreements, and was unfair and dishonest and unworthy of being trusted by the public, and was unworthy of being recognized as a fair and honest and upright citizen. Wherefore defendant was humiliated and injured." (5) Same as 2, down to and including the words "a part hereof," and adding: "Plaintiff avers that said publication was made in the issue of said paper published under date of July 4, 1903; that upon such publication plaintiff notified this defendant not to repeat said publication in the next issue of said paper, or any subsequent issue thereof. And plaintiff avers that his said request has been ignored and disregarded by said defendants, and the said publication has been made and repeated in the issues of said Labor Review of July 11, 18, and 25, and August 1, 1903. And plaintiff avers that said publication and its said several repetitions were intended by said defendants to prejudice the public mind against the plaintiff in his business of contracting and prevent him from securing contracts from which and out of which plaintiff might make his living expenses; plaintiff being engaged then and now in the business of contracting for the erection of buildings and other structures; also to prevent the plaintiff from employing mechanics in a sufficient number to enable plaintiff to carry out and perform the said contract, and also to humiliate this plaintiff in the minds of the public, and make upon the public the impression that plaintiff was dishonest and unfair and unworthy of credit and unworthy of confidence or trust, and that plaintiff was unfair and dishonest in his dealings; and plaintiff avers that said publication as aforesaid, and its repetition afterwards in disregard of plaintiff's warning, was and is malicious and injurious to plaintiff in the said sum of $10,000."

Demurrers were interposed to the first count as follows: "(1) It fails to show any cause of action against these defendants. (2) It fails to show that plaintiff was defamed or otherwise injured in the publication therein set out. (3) It contains no averment of any special damage alleged to have been sustained by the plaintiff by reason of such publication. (4) The words used in the publication set out therein charge no indictable offense. They impute no fraud, dishonesty, or other moral turpitude to the plaintiff, nor tend in any way to render him odious in public estimation, or to exclude him from respectable association, and no special damages are alleged therein. (5) The words used in such publication are not actionable per se." These grounds were filed to the second count, with the following additional grounds: "(6) The words used in said publication in the second count do not charge that plaintiff was unfair in his dealings and settlements with his employes. (7) Said count does not show that by reason of said publication plaintiff was prevented from employing mechanics, etc. (8) It does not show that plaintiff had at the time of said publication, or has had at any time since, any contracts to perform and carry out which he was prevented from carrying out and performing by reason of such publication, and hence fails to show sufficient facts to support the allegation of damages therein contained. (9) For that said publication was a privileged communication between defendant and the Carpenter's Union No. 376, and was published in the interest of and for the protection of said union, and not for the purpose of injuring plaintiff in any way, as is sufficiently shown by the publication itself, and no action will lie against these defendants for making the publication under the instruction of said Carpenter's Union. (10) There is no averment in the complaint that said

Carpenter's Union instructed, or that the president or the financial secretary thereof instructed, the Labor Review Publishing Company, or T. J. Lamar, or Charles Lamar, to make said publication with malicious intent. (11) For that it shows on its face that the publication is not falsely made. (12) For that it shows on its face that it is not maliciously made. (13) For that the language of said publication is not capable of the construction placed upon it by the pleader in said count, and said inuendo is not supported by the language used in above publication, and is not a proper or correct inference therefrom. (14) For that there is nothing in the libel or publication complained of in itself which subjects the plaintiff to ridicule, disgrace, or infamy, or tends to injure him in his business." All the demurrers heretofore filed were filed to counts 3, 4, and 5, with the following additional grounds: "(15) For that the alleged libelous matter set forth in said count does not warrant or justify the innuendoes laid in said counts. (16) Because the innuendoes contained in said count enlarge and add to the fair and proper use of the matter alleged to be libelous." To the fifth count, because it incorporates several different and distinct causes of action, and because the gravamen of the supposed cause of action therein alleged is the repetition of the publication after having been warned by plaintiff not to repeat it, and fails to show cause of action. Demurrers were interposed to the complaint as a whole, because it was nowhere averred therein that the name of the plaintiff was not put on the unfair list by the Carpenter's Union, or that his name was falsely or maliciously placed thereon, or that it was causelessly placed thereon; (2) misjoinder of causes of action; (3) misjoinder of defendant; and various other grounds not necessary to be here set out.

The other facts sufficiently appear in the opinion.

MATTHEWS, MARTIN & MATTHEWS, and CHARLES D. CLINE, for appellant. No special damage is averred or shown. The words are not actionable per se.—*Wafford v. Meeks*, 129 Ala. 349. Plaintiff was confined to the meaning alleged in the innuendo.—*Smid v. Bernard*, 63 N. Y. Sup. No. 2, p. 278. On the same authorities the charges requested by appellant should have been given. The court erred in permitting plaintff's counsel to read to the jury the anti-boycott act, and the definition of the word "unfair" from Webster's Unabridged Dictionary. —38 Am. Rep. 573; 28 Am. Rep. 582; 24 Am. Rep. 575.

CALDWELL & JOHNSON, and BLACKWELL & AGEE, for appellee. The court did not err in any particular and the judgment should be affirmed on the following authorities.—*Ware v. Clowney*, 24 Ala. 707; *Ware v. Cartlidge*, 34 Ala. 622; *Pool v. Deevers*, 30 Ala. 672; *Steiner v. Marx*, 58 Ala. 608; *Geither v. Advertiser Co.*, 102 Ala. 458; *Broker v. The State*, 100 Ala. 30; *Weir v. Hoss and wife*, 6 Ala. 881; *Ivy v. Pioneer Co.*, 113 Ala. 349; *Wafford v. Meeks*, 129 Ala. 349.

McCLELLAN, J.—The action is for libel; and the act, commonly called the "Anti-boycott Law," approved September 26, 1903 (Gen. Acts 1903, p. 281), neither had nor has any bearing upon the case. If it should be otherwise influential in such an action, this suit was instituted before the passage of the act.

The matter complained of, which appeared in several issues of the Labor Review, a newspaper, is thus stated in the pleadings: "Carpenters Take Action. At a Recent Meeting Contractors are Placed on 'Unfair List.' The Labor Review has been handed the following, with instructions to publish and keep standing until the par-

24 R

ties named have decided to set themselves square with organized labor: 'To the Labor Review: The following contractors have been placed on the unfair list by the Carpenters' Union No. 376, towit: J. W. Galliher, Tyson & Sons, J. T. Thrasher, Contractor Smoote. H. H. Brown, President. E. R. Moore, F. S.' "

Counts 2, 3, and 5 seek a recovery for injuries suffered by the plaintiff in his business capacity as a contractor, and count 4 for the ascribed aspersions on his character. The three first mentioned counts allege the engagement of plaintiff in the profession or business of a contractor and aver the infliction of damages on him in that capacity, imputing, by way of innuendo, to the publication the meaning that he was dishonest, unreliable, and undeserving of the confidence of the public in his avocation. The fourth count, as it is written, consists, in substance, in the averment of the publication and innuendoes ascribing the meanings above stated, but without reference to his calling. The first count, in the Code form, was stricken on demurrer, evidently upon the idea that the matter was not libelous per se. This ruling was, of course, correct. Hence we treat the case as rested upon words not per se actionable.

Many of the text-writers and courts have recognized a distinction between that class of actions for libel where the object of the offending matter was the profession, trade, or business of the plaintiff, and that class where the publication was directed against the individual.—25 Cyc. pp. 326-329, 353-355, and notes. In the former class it has been held that the gist of the action is the injury intentionally inflicted by the publication of the false matter, and that the averment of special damages will state a cause of action; and, in the latter, that in order to sustain the action the words must be susceptible of a meaning defamatory in its character.—

*Iron Age Co. v. Crudup,* 85 Ala. 519, 5 South. 332. A consideration of the controverted question as to whether the matter must be defamatory to maintain an action for libel of one in his profession, trade or business is entirely obviated in this case, since the plaintiff has, by his innuendo, ascribed to the publication a meaning or meanings by which he is bound (*Callahan v. Ingram,* 122 Mo. 366, 367, 26 S. W. 1020, 43 Am. St. Rep. 583), and the correctness of which must be found, if the demurrer was properly overruled. So we are relegated to a construction of the publication to ascertain whether it is susceptible of the defamatory meanings attributed to it.—*Gaither v. Advertiser Co.,* 102 Ala. 458, 14 South. 788. And, if the matter pleaded is not susceptible of the meaning ascribed, the action must fail.—*Gaither's Case, supra.*

The rule has long obtained in this court that, in construing alleged libelous publications, the whole must be considered, and that construction adopted which will accord to the matter, or the words employed, such a meaning as is most natural and obvious, in the plain and popular sense in which the public understand them.— *Iron Age Co. v. Crudup,* 85 Ala. 519, 5 South. 332; *Stallings v. Newman,* 26 Ala. 300, 62 Am. Dec. 723; *Robinson v. Drummond,* 24 Ala. 174. No strained construction is tolerable, nor a meaning ascribed, in the absence of circumstances so indicating, that is only justified by the application to words of definitions, to be found in the lexicons, of unfamiliar and rare and unusual use. Of course, upon occasion, the lexicon may be taken in aid of a proper construction of the language employed; but it cannot give a meaning to the words in which they are not generally understood in the parlance of the day. And it is also manifest that words innocent in themselves may become capable of conveying an offensive

meaning by their association with other words—a quali-
fied application of the maxim "noscitur a sociis"; and,
on the other hand, words susceptible of carrying a slan-
derous meaning may be bereft of that quality by their
association with other parts of the context. The ac-
tionable quality of the publication is rested in the com-
plaint upon the word "unfair," and, as therein used, is
averred to mean, in short, dishonesty, faithlessness to
contract, unreliability, and undeserving of confidence.
Of course, if so, then a cause of action is well stated.
Those meanings, among others innocent, are, in sub-
stance, given the word by the lexicographers. In the
publication, whether we look at the communication from
the Carpenters' Union or the matter preceding it, the
word "unfair" is coupled with the word "list," and, as
written, describes and qualifies, grammatically speak-
ing, the word "list." It imports a list containing the
names of those who are unfair, and whose names, as
contractors, are given.

The source of the publication is a branch of what is
generally known as "organized labor," and the vehicle
of dissemination is the Labor Review, which the matter
shows undertakes to speak for organized labor. It also
appears that the Carpenters' Union entertained hostil-
ity to the contractors named, and proposed to inform
the public of their attitude pending the decision of those
contractors to square themselves with organized labor.
And we know, as of common knowledge, that the pur-
suit of his vocation by a contractor is immediately de-
pendent in a large measure and generally upon the ser-
vices of carpenters, as well as other artisans. We think
this states the setting of the publication as strongly as
it may justifiably be done. Organized labor is an organ-
ization as universally known as any existing in the
country, and its purposes are alike as well recognized.

In fact, no association of which we are informed is more generally known than that of the laborer, tradesman, and artisan. The press teems with notices pertaining to it, and the industrial centers and the cities of the country are constantly the scenes of its activities. Barring the agricultural communities of the land, hardly any enterprise, business, or constructive undertaking is without the pale of its effect. Of such an organization, so widespread and active, the courts cannot be oblivious, either of its existence or general practices. Hence, we think that, in this case, common knowledge must have resourse in determining the susceptibility of the publication under consideration to the meanings ascribed by the innuendoes. The averments of the counts do not present any fact or circumstance additional, for the purpose in hand, to that to be gained from the face of the pleaded matter. Applying our common knowledge to this publication, which emanates from organized labor and is borne to the public through a paper identified therewith, it must be concluded that the word "unfair," when coupled with the word "list," is an idiom of the language of that organization. It has, in a sense, coined the descriptive term composed of the two words, and thereby given to the couplet, a meaning as distinctive as any in our language—a meaning not imported by the separated words when reference is had either to the lexicon or the usual understanding of the public.

So, if we are correct in the stated conclusion, the inquiry is: Under the circumstances attending its utterance, primarily its source and the subject-matter to which applied, is the term susceptible of the meaning ascribed by the innuendo? We think not. The term manifestly does not impute a want of personal integrity. To give it such a meaning would be to render wholly meaningless the phrase stating that the matter would

be kept "standing until the parties named have decided to set themselves square with organized labor." The only possible inference, in the light of the quoted limitations, to be drawn is that the announcement of the action of the union in placing the contractors on the unfair list will be continued until they had squared themselves with organized labor. It is inconceivable that a want of professional or business integrity—moral decrepitude as contractors—would be thus described, and, if so, that the fault could be cured by a decision to square themselves with organized labor. But, beyond this, the common knowledge which we have already applied, and which current events and history compel us to apply, the placing of parties on an unfair list by organized labor is nothing more or less than a declaration of the unfriendliness of the named parties to the organization which originated the means and term. It has become a familiar weapon, as it were, of the institution, to enforce its rules and regulations and to, from its viewpoint, compel a recognition of its conceived rights. The means and terms and purpose present in the unfair list rob it of any semblance of an effort to impute moral turpitude to the listed persons. The public have never so understood it. It has been universally taken to mean, and mean only, that the listed persons were rebellious against the rules, regulations, and authority of organized labor, and that that organization pronounced the fact that unfortunate results have and may attend one so listed is true; but, as we have said, the counts here ascribe meanings to the publication, and to these meanings the plaitniff commits the survival of his action.

However reprehensible may be the practice of listing as unfair persons violating the rules, etc., of organized labor, and however damnifying to private interests that practice may be, such cannot serve to render libelous

[Sanders v. Davis.]

that which, as here pleaded, is not so. What if the matter were pleaded with only the averment of special damage directly and naturally attending the publication, if false, would be our opinion, we are not called upon to say. So we hold that the matter pleaded is not susceptible of the meanings ascribed in the counts, and therefore the demurrer should have been sustained.

For the error indicated, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

TYSON, C. J., and DOWDELL and ANDERSON, JJ., concur.