(86 South. 383)
CHOCTAW COAL & MINING CO. v. LILLICH. (6 Div. 117.)

(Supreme Court of Alabama. Oct. 21, 1920.)

1. **Corporations** ⬤⟋423—**Responsible for libel by agents only if authorized, ratified, or within authority.**

A corporation is responsible for a written or printed libel by its agent only if it authorized publication of the libel, if it ratified or approved it, or if it was published by the agent while acting within the scope of his authority.

2. **Corporations** ⬤⟋423—**Responsible for slander by agent only if authorized or ratified.**

A corporation is liable for oral defamation by an agent only when it expressly authorized the agent to utter the defamation or ratified it thereafter.

3. **Corporations** ⬤⟋426(12)—**Knowledge that libel by agent was by him claiming to act as agent necessary to ratification.**

A corporation does not ratify the act of an agent in publishing a libel merely by failure to disavow the libel if it had knowledge of its publication, unless it also knew that it was published by its agent claiming to act on behalf of the corporation.

4. **Corporations** ⬤⟋423—**Libel by mine superintendent held not within presumed scope of authority.**

The act of the assistant superintendent of a coal mine in writing, above a posted list of the names of employees who were absent from work during war time, the word "slackers," is not such an act as shows that he was assuming to act for the company or in the accomplishment of its ends, so that it cannot be found that such act was within the scope of his authority in the absence of evidence to that effect.

5. **Libel and slander** ⬤⟋6(1)—**Charging plaintiff with being "slacker" is libel per se.**

The term "slacker" during the war acquired the particular meaning of a person who shirks a duty or obligation to his country and is calculated to subject a person to hatred and contempt, so that the publication of such a charge concerning a person during war time is libel per se.

6. **Libel and slander** ⬤⟋82—**No colloquium necessary where meaning and application to plaintiff are clear.**

Where the defamatory language was of a certain import and on its face applicable to

plaintiff, no colloquium was necessary in the complaint for libel.

**7. Libel and slander ☞123(2)—Meaning of word held a question for jury.**

Where the language of the alleged libel was capable of each of the meanings suggested by the innuendoes, the question whether it had those meanings is for the jury to determine.

**8. Libel and slander ☞86(4)—Innuendoes may be disregarded as surplusage.**

Where the complaint charged a libel actionable per se, innuendoes, whether warranted or not, are surplusage, and did not render the complaint demurrable.

**9. Appeal and error ☞1040(11)—Overruling demurrer to count charging libel or slander alternatively held harmless.**

Error, if any, in overruling a demurrer to a count which charged slander or libel in the alternative, was not prejudicial to defendant, where there was no issue of spoken defamation at the trial and where other substantially similar counts were free from that objection.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Action for damages for libel and slander by John Lillich against the Choctaw Coal & Mining Company. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals, under section 6, p. 449, Acts 1911. Reversed and remanded.

The complaint contains six counts, the first, fifth, and sixth of which went to the jury. Count 1 alleges defamation of plaintiff by defendant corporation by charging him with being "a slacker" in the alternative by written or spoken words. Count 5 alleges a defamation of plaintiff by defendant by publishing of plaintiff upon a board at defendant's mine in Walker county the following matter: "List of slackers, John Lillich." Count 6 is substantially the same as count 5, except it charges that the publication was made by defendant's agents or servants while acting within the line and scope of their authority as such. Each count alleges substantially that by calling the plaintiff a "slacker" defendant intended to charge that he was not loyal to the United States during the recent war with Germany; that he had not responded to a call of the United States government during said war; or that he had failed to work at getting out coal from the mines, which was necessary to carry on said war. Count 6 alleges that plaintiff's vocation was that of a coal miner, but counts 1 and 5 do not so allege. Demurrers to the several counts being averred, there was a trial by jury on the general issue. Defendant requested in writing the general affirmative charge as to the whole complaint and each count separately, which requests were severally refused.

John H. Bankhead, Jr., of Jasper, for appellant.

The corporation was not liable for the acts of its agent, as disclosed by the evidence in this case. 150 Ala. 574, 43 South. 210, 9 L. R. A. (N. S.) 929, 124 Am. St. Rep. 90.. The charge did not constitute a libel. 163 Ala. 348, 50 South. 1008. On these authorities, the general charge for defendant should have been given.

Leith & Powell and M. E. Nettles, all of Jasper, for appellee.

In addition to the authorities cited by appellant, we call attention to 58 Ala. 608, as justifying the action of the trial court in all particulars.

SOMERVILLE, J. The undisputed evidence shows. that a typewritten sheet containing a list of the names of coal miners who did not report for work on the preceding day was each day posted on a board at the mouth of the mines operated by the defendant company; that on or about July 18, 1918, such a list was so posted by an agent of the operating company under the caption "Employees not working July 18th," and in the list was the name of the plaintiff; that one Verg West, who was defendant's assistant superintendent, thereupon wrote on said board, with chalk or paint, above the paper sheet the words "List of Slackers"; and that the board in that condition was seen by a number of people.

Although the witness Nicol testified that he was general superintendent for defendant company prior to July 9, 1920, and that on that day defendant company discontinued its operation of these mines and turned them over to another company which thenceforth operated them exclusively, there was other testimony from which the jury could properly find that defendant company continued to control and operate the mines down to a date later than July 18th.

[1] The defendant company's responsibility for the alleged libel, assuming that it was in control of the mines at the time in question, must be based upon one of three propositions: (1) The libel must have been published by the servant West by the authority of defendant company; or (2) it must have been thereafter ratified or approved by it; or (3) it must have been published by West while acting within the scope of his authority, or within the course of his. employment, in furtherance of defendant company's business. Republic I. & S. Co. v. Self, 192 Ala. 403, 68 South. 328, L. R. A. 1915F, 516; So. Exp. Co. v. Fitzner, 59 Miss. 581, 42 Am. Rep. 379; 10 Cyc. 1216, b.

[2] It may be noted in passing that corporate liability for "oral" defamation must

be grounded upon either the express authority of the servant who utters it, or upon corporate ratification thereafter. Singer Mfg. Co. v. Taylor, 150 Ala. 574, 43 South. 210, 9 L. R. A. (N. S.) 929, 124 Am. St. Rep. 90; 10 Cyc. 1216, 5.

There is nothing in the testimony which tends in any way to show that West was authorized by defendant company to write this offensive language over plaintiff's name on the board.

Nor is there anything in the evidence that has the slightest tendency to show that defendant company ever approved or ratified the act. It appears that the writing remained on the board for a day or two at most; and, even if the inference could be drawn that defendant company had notice or knowledge of its brief presence there, there was nothing to betray its authorship, and nothing to indicate that a servant of the company was professing to act in its behalf or assuming authority to do so.

[3] Had the company been advised of the writing, and that it was done by its servant in its behalf, its failure to repudiate the act with reasonable promptness would no doubt have amounted to approval and ratification. Penn. Iron Works Co. v. Vogt Mach. Co., 139 Ky. 497, 96 S. W. 551, 8 L. R. A. (N. S.) 1023, 139 Am. St. Rep. 504.

But without such knowledge of authorship and purpose, a mere failure to disclaim responsibility on the part of the company cannot generate or support the inference of corporate approval or ratification.

[4] So far as the third basis of liability is concerned, there is nothing in the evidence to even suggest that West, as assistant superintendent or in any other capacity, was authorized to do any act in the conduct of defendant's business to which this defamatory publication was a reasonable incident; nor does it appear from the circumstances of the act itself that West was assuming to act for the company or in the accomplishment of its business ends. Indeed, so far as appears, his act was spontaneous and independent—a mere vagrant impulse, whether of sport or malice—and a distinct departure from the company's authorized practice of publishing the names of absentee miners under an appropriate and lawful caption.

For the reasons stated, we hold that the general affirmative charge should have been given for defendant as requested, and its refusal was prejudicial error.

[5] Webster's New International Dictionary (1919) defines the word "slacker" as follows:

"One who avoids or neglects a duty or responsibility; specifically, a person who shirks a duty or obligation to his country, especially in time of war, as by attempting to evade military service."

The word is not found in prewar lexicons, but had its genesis as to use and meaning in the conditions following our entrance into the World War, and in the exigencies of its successful prosecution. During the war it was unquestionably a term of the severest reproach, well understood by all men, and calculated to subject its bearer to hatred and contempt in practically every community in the land.

To falsely publish such an accusation of any person was manifestly libelous per se, and imported injury without special averment or proof. Whether or not this would be so in time of peace we need not determine.

[6-8] The defamatory language being of certain import and on its face applicable to plaintiff, no colloquium, or setting, was necessary in the complaint; and, being capable of each of the meanings suggested by the innuendoes, those meanings, vel non, were questions for the jury to determine. Penry v. Dozier, 161 Ala. 292, 49 South. 909. With respect to the questions of pleading raised by demurrer to the complaint, the innuendoes, whether warranted or not, could be treated as surplusage, and did not render the complaint demurrable, since it charged a libel actionable per se. 161 Ala. 301, 49 South. 909.

[9] If there was error in overruling the demurrer to count 1, on the ground that it charged slander or libel in the alternative, the error was without prejudice to defendant, since there was no question of spoken defamation in the case as tried, and other substantially similar counts were free from that objection.

For the error noted, the judgment of the trial court will be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.