### LANE v. THE WASHINGTON DAILY NEWS.

No. 6613.

United States Court of Appeals for the District of Columbia.

Decided Aug. 31, 1936.

Leon Pretzfelder and Francis M. Sullivan, both of Washington, D. C., for appellant.

Mark P. Friedlander and Charles L. Walker, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a judgment of the Supreme Court of the District of Columbia,[1] dismissing the appellant's declaration. Appellee had demurred thereto and the court sustained the demurrer. The appellant elected to stand on the declaration. The sole question in the case is whether the declaration stated a cause of action.

The declaration alleged that: The appellant (plaintiff below) was a resident of Vermont "domiciled" in the District of Columbia a part of each year, and an honorable and law-abiding citizen who had enjoyed a reputation for peace and good order and had never been implicated in, or suspected of the commission of, any unlawful act or crime, or suspected of association with criminals. On June 30, 1934, the appellee (defendant below) maliciously, willfully, falsely and wrongfully composed, edited, printed and published in a newspaper called "The Washington Daily News" and caused and procured to be delivered, circulated and published at large in Washington, District of Columbia, and elsewhere, and to be published at large and amongst the appellant's friends, neighbors and acquaintances the following newspaper article:

"Auto Crash Reveals
Cache of Weapons.
"(Special to the News.)

"Fredericksburg, Va.—Two Washington men, L. L. Lane, 60, and W. H. Cotten, 46, who gave their addresses as 101 B-st se., Washington, D. C., are in Mary Washington Hospital here today with painful injuries received when their car crashed into a culvert early this morning.

"Investigating the crash, police discovered two sawed-off shotguns and four revolvers in the wrecked auto.

"The care bore Vermont tags. The men said they were forced off the road, but refused, according to police, to discuss the presence of the weapons."
The appellee thereby meant to be understood, and was by the public at large and by the appellant's friends, neighbors and acquaintances understood, as charging and insinuating that the appellant was one suspected of, charged with, or implicated in the commission of unlawful acts or crimes, and an associate of criminals and other persons who did not abide by the law and was one of a group of criminals known as "gangsters". On account of the foregoing the appellant has been greatly humiliated, and has suffered great mental anguish, and has been and is greatly injured in his good name, fame, and reputation, and has been brought into public scandal, infamy and disgrace, and held up to public ridicule, hatred and contempt. Judgment was prayed for in the sum of $15,000.00.

The position of the appellee is that the article, whose publication is admitted by the demurrer for the purpose of testing whether a cause of action was stated in the declaration, is merely susceptible, rather

[1] Now named the District Court of the United States for the District of Columbia. Public No. 796, 74th Congress, approved June 25, 1936, c. 804, 49 Stat. 1921.

than necessarily, of libelous meaning, and that therefore allegations of extrinsic fact were necessary. Appellee does not dispute that if the article is libelous *per se,* special damage need not be alleged. The contention of the appellant is that the article alleged to have been published by the appellee was on its face libelous *per se,* so that it was unnecessary to set forth matters of inducement, *i. e.,* allegations of extrinsic fact tending to support the innuendo drawn by the appellant from the article.

▮ The applicable rule of law is thus stated in Washington Post Co. v. Chaloner, 250 U.S. 290, 293, 39 S.Ct. 448, 63 L.Ed. 987, in a quotation from Commercial Publishing Co. v. Smith (C.C.A.) 149 F. 704, 706, 707:

"A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item, including display lines, should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read."

Also it is well settled that if statements, whose meaning under the above rule is so unambiguous as reasonably to bear but one interpretation, tend to bring the plaintiff into contempt, ridicule and disgrace they are libelous *per se,* and this even though they do not actually charge the plaintiff with the commission of a crime. Washington Times Co. v. Downey, 26 App.D.C. 258, 6 Ann.Cas. 765; Poston v. Washington, A. & Mt. V. R. Co., 36 App.D.C. 359, 32 L.R. A.(N.S.) 785; Washington Herald Co. v. Berry, 41 App.D.C. 322. We said, at page 339, in the case last cited:

"Where the charges in a publication tend to bring the plaintiff into contempt, ridicule, or disgrace, they are libelous *per se,* and it is not necessary that they charge a criminal offense also. [Citing numerous authorities.]"

▮ Whether statements declared on in a defamation suit are susceptible of but one meaning, and whether that is a meaning which tends to bring the subject of the statements into contempt, ridicule or disgrace, is of necessity a question for the judgment of the court in each particular case on its own facts. Other cases, though persuasive, are rarely controlling because of variations in the words used. For this reason, while we have considered the cases cited by counsel, we think it not useful in this opinion to review them.

▮ We feel bound to conclude that the article alleged to have been published by the appellee is libelous *per se* and that, therefore, the appellant's declaration stated a cause of action. What the statements charge is clear; they unambiguously charge that the appellant and his companion had a cache of weapons, revealed by an automobile crash; that the weapons consisted of two sawed-off shotguns and four revolvers; that the appellant and his companion refused to discuss the presence of the weapons; and that though they gave their address as Washington, D. C., their car bore Vermont tags. We think it not possible to conclude that these clear charges are capable of two meanings, one of which would be defamatory, and the other not. We think they could have but one meaning in these days, that the subjects of the statements were "gangsters", and we think that such a meaning would bring them into contempt, ridicule or disgrace. Cache implies concealment; the number and character of the weapons together implies criminality. It is a matter of common knowledge that sawed-off shotguns are the implements of but two classes of persons, "gangsters" and officers of the law. Certainly the charges are not susceptible of the construction that the appellant and his companion were the latter.

Accordingly the judgment of the trial court is

Reversed, and the case remanded for further proceedings.