## ALBERT MILLER & CO. v. CORTE et al.
### No. 9065.

Circuit Court of Appeals, Fifth Circuit.
Nov. 24, 1939.

Rehearing Denied Dec. 22, 1939.

HOLMES, Circuit Judge, dissenting.

———◆———

Wm. G. Caffey and Harry T. Smith, both of Mobile, Ala., for appellant.

Sam M. Johnston, T. E. Twitty, and Charles B. Arendall, Jr., all of Mobile, Ala., C. L. Hybart of Monroeville, Ala., and John Chason, of Bay Minette, Ala., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for libel. The publication was in the Mobile Press, a newspaper published in Mobile, Alabama. This is the Article:

"Baldwin Planter Says State Deal Cut
    Spud Prices.
Corte says man handling Prison Farm
    doesn't care about returns.
    By a Staff Correspondent

"Loxley, May 29.—'Dumping' of potatoes from a 1,000 acre state-owned planting at the Atmore Prison Farm today was blamed as a contributory reason for the deplorable condition of the early Irish potato market.

"Ernest Corte, of the firm of A. A. Corte & Sons here, one of the South's largest produce growing and shipping firms, asserted the Alabama state board of administration had let the huge Atmore planting out on consignment to Albert Miller of Chicago, 'and he has been dumping the potatoes with no thought of the market. He makes his commission, and doesn't care about prices.'

"Miller could not be reached for a statement.

"Had Contract Last Year.

"(The Corte firm last year had a contract with the board of administration on a share basis for raising potatoes at the Atmore and Speigner Prison Farms. They said they took the contract 'in self-defense,'

in an attempt to control shipments and prevent dumping. This year the state planted its own potatoes, and then let the sales out on consignment, Corte said).

"Meanwhile, potato growers all over the South, faced with prices of 70 cents per hundred for No. 1 grade and 20 cents for No. 2's, have appealed to the federal government for aid, and the Surplus Commodity Corporation plans to start buying spuds the first of the week for relief purposes.

"Corte said 'if potatoes were shipped with some thought to the market price itself, rather than just a commission, several hundred cars daily would not be rolling into Northern and Eastern markets, glutting those centers.'

"Shipping Continues

"Corte and other firms continued to ship potatoes, though not in any great lots, today from Baldwin County, where 18,000 acres of the early variety were planted this year. He said about 3,500 cars have already moved, and he expects another 700 or 800 with shipping to continue another week or so.

"'We can't quit shipping altogether,' Corte said. 'We have to continue, because California, Louisiana, Mississippi, Georgia and the Carolinas are also shipping.'

"Hope For Price Rise

"Prices were 70 and 20 cents Friday, after packing sheds were shut down altogether Thursday. There was a virtual shutdown in the Atmore section of Escambia County today, where hundreds of farmers have thousands of acres of potatoes, aside from the state prison planting. There were a couple of operators digging at Atmore, but most farmers have quit until the first of the week.

"Many Left in Ground

"In Mobile County, the third largest Alabama potato area, there is little shipping, farmers figuring they would rather let the spuds stay in the ground and rot than to lose money digging them.

"Aside from the tuber situation, the cucumber crop quality was improving today, and packers were paying 50 and 30 cents per hamper. Though lack of rain has cut the yield, there is a fair movement.

"Sweet corn is not much, and shippers are not buying the 'nubbins' now coming to the market. A supply of good quality corn

is expected to be available for shipment late next week, however."

The complaint in a single count reads:

"1. Plaintiff claims of the defendants, jointly, separately and severally, the sum of Two Hundred and Fifty Thousand and no-100 ($250,000.00) Dollars damages for falsely and maliciously publishing, or causing to be published of and concerning the plaintiff, in The Mobile Press, a newspaper published in Mobile, Alabama, on May 29, 1937, the following matter, with intent to defame the plaintiff, namely: (Here follows article above quoted.)

"And the plaintiff avers that although the said publication referred to the plaintiff as 'Albert Miller of Chicago,' the said Albert Miller had long since been dead, and the plaintiff was, in fact and in truth, commonly known and referred to in the trade as 'Albert Miller', and was the party to whom reference was made in the said publication. (Here follows jurisdictional averments.)

"And the plaintiff further avers that at the time of the said publication of the said libel and prior thereto the plaintiff was engaged in business in several places, namely, Grand Rapids, Michigan; Waupaca, Wisconsin; Minneapolis, Minnesota; Grand Forks, North Dakota; Scottsbluff, Nebraska, and Burley, Idaho, and that it was also engaged in Baldwin County, Alabama, in the same business of selling and distributing, in interstate commerce and for compensation, potatoes and other farm products grown in the said county and owned by others, and the said A. A. Corte and Sons were also carrying on the same line of business in the said County in competition with the plaintiff."

Demurrers, that the article complained of was, as matter of law, not libelous per se, were sustained, and plaintiff declining to plead further, judgment went against him.

This appeal tests whether that ruling and judgment is for error.

Much is said in the briefs of appellee about the Alabama decisions and their controlling effect, as though libel in Alabama, were a separate and peculiar thing, governed and controlled there by separate and peculiar laws. Appellant, on its part, insisting that the law of libel in Alabama is the common law as it is known and understood, generally, places its reliance that its complaint states a case firmly on the law as the Alabama decisions have declared it.

We agree with appellant that the law of Alabama as to libel, questions of pleading aside, and there the Alabama practice is in line with simple pleadings generally, is not different from that generally prevailing. We agree with it too, that tested by the law of libel, as it is understood in Alabama and generally elsewhere, the complaint was not demurrable, the demurrers were wrongly sustained.

Still artificial in some jurisdictions, in some of its aspects, particularly as to form and trappings, the law of libel is, in the main, in most of the states of the union, and Alabama is one of them, in its substance, reasonably simple, understandable and workable. [1]

■■ This rule is that it is for the court to determine in the first place, whether the words used, are capable of a defamatory meaning, that is, of being taken as a libel, and for the jury in the second place, to say, whether the words as applied to the plaintiff, were in fact, a libel, that is, whether they were understood and taken in a libelous sense. "In determining whether the words are capable of a defamatory meaning, the Judge will construe them according to the fair and natural meaning which will be given them by reasonable persons of ordinary intelligence, and will not consider what persons setting themselves to work to deduce

---

[1] Even in those few jurisdictions as in Missouri, Montana, Colorado, South Dakota and Wyoming, where the Constitution provides that "in all suits and prosecutions for libel, the jury under the directions of the court, shall determine the law and the facts," the function of the court and jury, is not greatly different in the trial of libel from what it is in other cases. The courts of those states, notwithstanding the constitutional provision, follow the rule that, though libel or no libel is a question for the jury, it is for the court primarily to determine whether the publication is capable of a defamatory meaning, and for the jury to determine whether, if capable of being, it was in fact, libelous. Joseph Diener v. Star Publishing Co., 230 Mo. 613, 132 S.W. 1143, 33 L.R.A.,N.S., 217, cf. Oakes v. State, 98 Miss. 80, 54 So. 79, 33 L. R.A.,N.S., 207, in which as to a similar provision limited to criminal libel, the Supreme Court of Mississippi holds in substance the same thing.

some unusual meaning might succeed in extracting from them." [2]

■ Appellee vigorously argues to us that the Alabama decisions, hold that for a publication to be libelous per se, it must be capable of yielding only one possible meaning, that is, in effect, if astuteness and ingenuity can read its sting out, it must be held no libel. This will not do. The Alabama decisions in accord with the law of libel as it is generally understood, hold that if the alleged libelous article, read not critically and with a purpose, if possible, to dull its cutting edge, but as the average normal and reasonable person of ordinary intelligence, in the community of the publication would read it, is capable of exerting a damaging effect on an individual or corporation, in his trade, business, occupation or profession, it may not as a matter of law be held, not libelous. Tested by this rule, we think the publication in question here, is not only capable of being libelous as to plaintiff, but as it would be read by the average, normal person in the community where it was circulated, its libel is so plain, that he who ran, may have read it there.

■ Appellees also seem to argue that because appellant is a corporation, this rule does not apply to it, but we do not understand the law to be so declared, either generally or in Alabama. In the Torts Restatement, the rules generally applicable to suits for libel, are briefly and clearly stated. The Alabama decisions do not in any manner depart from them. These rules are:

"To create liability for defamation there must be an unprivileged publication of false and defamatory matter of another which

"(a) is actionable irrespective of special harm, or

"(b) if not so actionable, is the legal cause of special harm to the other." Section 558.

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Section 559.

"(1) One who falsely, and without a privilege to do so, publishes of a corporation for profit matter which tends to prejudice it in the conduct of its trade or business or to deter third persons from dealing with it, is liable to the corporation under the conditions stated in Section 558." Section 561.

"One who falsely and without a privilege to do so, publishes a slander which ascribes to another's conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, profession, or of his public office whether honorary or for profit, is liable to the other." Section 573.

"(1) The court determines whether a communication is capable of a defamatory meaning.

"(2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient." Section 614.

■■ Under this last named rule it is the function of the Judge to determine whether the communication is capable of bearing the defamatory meaning ascribed to it by the plaintiff, and whether the meaning so ascribed and carried is capable of being defamatory. If the Judge decides the communication is capable of bearing a meaning which may reasonably be regarded as defamatory, there is a further question for the jury, whether the communication was in fact, understood by the recipient thereof, in a sense which made it defamatory. The Alabama cases support these rules. Tested by their teachings, it seems perfectly plain that, the publication is capable of carrying the meaning, that the plaintiff was more concerned with getting commissions than with furthering the interests of its client; that, in short, the average normal person of ordinary intelligence might well understand it that way. Cases from Alabama and from the Federal courts fully supporting these views are cited in the margin. [3]

[2] Gatley on Libel and Slander, Third Edition, 1938.

[3] Advertiser Co. v. Jones, 169 Ala. 196, 53 So. 759; Gaither v. Advertiser Co., 102 Ala. 458, 14 So. 788, 789; White v. Birmingham Post Co., 233 Ala. 547, 172 So. 649; Johnson v. Turner, 159 Ala. 356, 47 So. 570; Marion v. Davis, 217 Ala. 16, 114 So. 357, 55 A.L.R. 171; Iron Age Pub. Co. v. Crudup, 85 Ala. 519, 521, 5 So. 332; Age Herald Pub. Co. v. Waterman, 188 Ala. 272, 66 So. 16, Ann.Cas.1916E, 900; Ala.Code 1923, Secs. 7357, 9460, 9531; Maytag Co. v. Meadows Mfg. Co., 7 Cir., 45 F.2d 299; Ætna Life Ins. Co. v. Mutual Ben. Health & Accident Ass'n, 8 Cir., 82 F.2d 115; National Refining Co. v. Benzo Gas Motor Fuel Co., 8 Cir., 20 F.2d 763, 55 A.L.R. 406; Lane v. Washington Daily News, 66 App.D.C. 245, 85 F.2d 822.

The demurrers were wrongly sustained. The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.

HOLMES, Circuit Judge (dissenting).

I think the judgment of the district court should be affirmed. Under the case of Erie Railroad Company v. Tompkins,[1] we are bound by the Alabama law, which is so clear, full, and explicit as to render it unnecessary for us to look elsewhere for guidance.

The principal question on this appeal is whether or not the alleged publication was libellous per se. That issue was presented with meticulous care by the complaint; it was met pointedly by the demurrer; it was decided by the court below before the new federal rules of civil procedure became effective, 28 U.S.C.A. following section 723c; and, in this court, it has been fully and fairly presented in the briefs and oral arguments of all parties as a decisive issue in the case. Therefore, the court below was correct in its ruling on the demurrer, even though the article be construed as libellous per quod.[2]

An inducement or innuendo is not necessary where the publication is libellous per se, but must be used when it is defamatory per quod. Section 9460 of the Alabama Code of 1923 does not abrogate the common-law rule in this respect. This section was the law when the case of Penry v. Dozier, 161 Ala. 292, 49 So. 909, was decided. Therein the court said, 161 Ala. page 299, 49 So. page 913:

"The sufficiency of complaints has been several times tested by this court since the enactment of these statutory provisions, and it has been held that, when the words complained of in libel or slander import or impute a crime, then the complaint may be very simple and brief, but, if the words used are susceptible of different meanings, some of which are libelous or slanderous, and others innocent, or if they are ambiguous or uncertain, or if uttered ironically, then the complaint must set forth enough antecedent or attendant facts to raise the implication that the offense charged was intended. Merely asserting in the complaint that the defendant intended to charge a certain crime is not enough unless the unaided words import that he did. If the words used do not import or impute a crime, they may be attended in the complaint with others, called inducements, occasions, colloquiums, and innuendoes, such as to make the complaint sufficient which would be otherwise insufficient. As Judge Stone says, these give point and direction to what otherwise would seem innocuous. Long v. Musgrove, 75 Ala. 158. * * * But if the words are unequivocally actionable per se—that is, charging a crime—then an innuendo will be treated as mere surplusage. 25 Cyc. p. 452."

In Age-Herald Publishing Co. v. Waterman, 188 Ala. 272, 66 So. 16, 18, Ann.Cas. 1916E, 900, the court said:

"If the language is not per se actionable, then facts, as inducements and colloquia, must be alleged to show the sense in which the language was used, that it applied to the plaintiff, and that, as so applied, it is actionable by him." See, also, White v. Birmingham Post Co., 233 Ala. 547, 172 So. 649; Marion v. Davis, 217 Ala. 16, 114 So. 357, 55 A.L.R. 171; Choctaw Coal & Mining Co. v. Lillich, 204 Ala. 533, 86 So. 383, 11 A.L.R. 1014.

From these decisions, the rule in Alabama is that, where the article imputes the commission of a crime, or is otherwise clearly defamatory, no inducement, innuendo, or colloquium is necessary, but if the words are reasonably susceptible of different meanings, some of which are innocent, then the complaint must contain the necessary allegations to make the defamatory import clearly appear. Where such allegations are necessary, no libel per se is stated.

Where the question relates to the plaintiff's conduct of his business, the rule in Alabama is stated in Age-Herald Publishing Co. v. Waterman, supra, 188 Ala. at page 285, 66 So. at page 20, Ann.Cas.1916E, 900 (quoting from Ware v. Clowney, 24 Ala. 707), in which the court said:

"The authorities generally concur in upholding this action in three classes of cases which injuriously reflect upon the trade, profession, or business of an individual, namely: First, when the words charge the person with a want of fidelity in his trade or profession generally; second, where they

---

[1] 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

[2] Hendrix v. Mobile Register, 202 Ala. 616, 81 So. 558; Tennessee Coal, Iron & Ry. Co. v. Kelly, 163 Ala. 348, 356, 50 So. 1008; Labor Review Pub. Co. v. Galliher, 153 Ala. 364, 45 So. 188, 15 Ann.Cas. 674.

charge such person with dishonesty, corruption, or want of integrity in a particular case; and, third, where the words impute ignorance or want of skill and capacity in general terms."

If we examine the publication, we find it in substance as follows:

Baldwin planter says state deal cuts spud prices. Corte says man handling prison farm does not care about returns. Dumping of potatoes from a 1,000-acre state-owned planting at the Atmore Prison Farm today was blamed as a contributory reason for the deplorable condition of the early Irish potato market. The Alabama State Board of Administration had let the huge Atmore planting out on consignment to Albert Miller of Chicago. He has been dumping the potatoes with no thought of the market. He makes his commission, and doesn't care about prices. If potatoes were shipped with some thought of the market price itself, rather than just a commission, several hundred cars daily would not be rolling into northern and eastern markets, glutting those centers.

There is no imputation to Albert Miller of want of fidelity in his trade or business. The article is devoted to a particular transaction, a deal with the State Board of Administration. Nothing is said about the way he conducted the rest of his business, or that he had any other business. Therefore, the publication does not meet the first test laid down in the Age-Herald case. The second test, want of fidelity, is also lacking. The disposition of the potatoes had been let on consignment, under a state deal, to Albert Miller, who had been dumping them on the market. It was further said that Miller "makes his commission, and does not care about prices." The language used clearly indicated that Miller was a factor and the State Board of Administration was his principal. The word consignment implied an agency and connoted delivery of the property, the title remaining in the assignor. [3]

The well-settled rule that an agent is bound by the instructions of his principal is applicable to the relationship between a factor and his principal. [4] The language used does not show that Miller & Company was unfaithful to its agency. Appellee insists that the article shows a breach of fidelity upon its face; but there is nothing in the language used which would imply that Miller & Company had violated its contract or the instructions it had received from the State Board of Administration. The contrary is necessarily implied, because the presumption is that men do not violate the law, that parties perform according to their contracts, and that factors obey the instructions of their principals. [5]

The statement that he makes his commissions indicates that he performed his contract and was not unfaithful, because otherwise he would have forfeited all claim to commission or other compensation. [6] Therefore, the language used is neither necessarily subject to the inference that Miller was unfaithful to the State Board of Administration nor guilty of dishonesty or want of integrity, nor does it impute ignorance or want of skill and capacity. If Miller was acting in obedience to instructions (and the language is susceptible of the construction that he was), the article cannot be said to be libellous per se. Furthermore, if he was obeying instructions, if he had no alternative but to sell, regardless of the market, he was bound to be indifferent to prices. If his principal was satisfied, the price could not legally be of any concern to him. In the law of libel the test is the import of the language used, and the courts cannot ignore it in determining its legal effect.

The case of Gaither v. Advertiser Co., 102 Ala. 458, 14 So. 788, shows how carefully the Alabama court scrutinizes the language for an innocent construction. For a case from this circuit, see Dun v. Maier, 5 Cir., 82 F. 169.

The Alabama authorities cited herein convince me that the alleged publication was not libellous per se, and I respectfully dissent from the judgment of reversal.

On Motion for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same is hereby, denied.

3 12 Corpus Juris, 526.
4 12 Corpus Juris, 359, Sec. 36.
5 22 Corpus Juris, 146.

6 Fordyce v. Peper, C.C., 16 F. 516, 519, 520; Story's Agency, Sec. 333, 334; 1 Pars.Cont. 99.